**In re MBNA AMERICA BANK, N.A.**

Nos. 02–1558, 74/472, 74/417, 74/908, 74/538.

United States Court of Appeals, Federal Circuit.

Aug. 15, 2003.

Michael A. Grow, Arent, Fox Kintner Plotkin & Kahn, PLLC, of Washington, DC, argued for appellant. With him on the brief was Evan S. Stolove.

Linda Moncys–Isacson, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for appellee. With her on the brief were John M. Whealan, Solicitor; and Thomas Krause, Associate Solicitor. Of counsel was Nancy C. Slutter, Associate Solicitor.

Before MAYER, Chief Judge, MICHEL, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

MBNA America Bank, N.A. ("MBNA") appeals the June 11, 2002, decision of the United States Patent and Trademark Of-

fice's Trademark Trial and Appeal Board ("the Board") affirming the Examining Attorney's refusal to register the word marks MONTANA SERIES and PHILADELPHIA CARD because Section 2(e)(1) of the Lanham Act, 15 U.S.C. § 1052(e)(1) (2000), precludes registration of marks that are "merely descriptive." *In re MBNA Am. Bank, N.A.*, 2002 WL 1285938, 2002 TTAB LEXIS 355 (June 11, 2002). Because the Board committed no legal error, and more than substantial evidence supports the Board's finding that the two service marks in issue are merely descriptive of a feature or characteristic of the services, i.e., according to the amended applications, "credit card services featuring credit cards depicting scenes or subject matter of, or relating to," the state of Montana or the city of Philadelphia, we affirm.

## I.

In 1993, MBNA filed two intent-to-use applications, pursuant to 15 U.S.C. § 1051(b), to register the marks MONTANA SERIES and PHILADELPHIA CARD for "credit card services." The recitation of services for the two marks was later amended to read: "credit card services featuring credit cards depicting scenes or subject matter of, or relating to," the state of Montana, or the city of Philadelphia, respectively. The term "CARD" in PHILADELPHIA CARD has been disclaimed. After rejections on various grounds, and withdrawal and reinstatement of certain rejections, the Examining Attorney finally refused registration of both marks citing Section 2(e)(1) of the Lanham Act.

Pending are at least 75 other applications filed by MBNA to register similar service marks, including at least 45 applications for state names preceding the word "SERIES" and 27 applications for city names immediately preceding the word "CARD." Two marks, DELAWARE SERIES and KENTUCKY SERIES, were allowed registration by the Examining Attorney and issued in 1992 and 1995, respectively.

MBNA appealed the Examining Attorney's rejection of registration for MONTANA SERIES and PHILADELPHIA CARD to the Board. The Board made specific findings regarding affinity credit cards, i.e., credit cards depicting images of or named after various social or lifestyle associations such as sports teams, universities, wine connoisseurs, bird lovers, etc. For the case at bar, the Board found that MBNA's services as recited in its applications were essentially "regional affinity" credit card services that combine traditional financial services with affinity cards named after geographical regions of the country. The Board found that a significant feature of MBNA's regional affinity credit card services was to appeal to the user's regional pride and loyalties with cards depicting scenes of and/or named after the state of Montana or the city of Philadelphia, and that this significant feature was further manifested by how MBNA marketed and promoted its affinity credit card services. Finding that the two marks merely described a significant feature of the underlying credit card services, the Board affirmed the Examining Attorney's refusal to register the marks.

MBNA appeals the Board's decision. This court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(4)(B).

## II.

This court reviews the Board's legal conclusions without deference. *In re*

*Hiromichi Wada,* 194 F.3d 1297, 1299 (Fed.Cir.1999). The Board's determination that a mark is merely descriptive is a factual finding, which this court upholds unless unsupported by substantial evidence. *In re Nett Designs,* 236 F.3d 1339, 1341 (Fed.Cir.2001). The principal issue on appeal is whether substantial evidence supports the Board's finding that the marks, as applied for, were merely descriptive. MBNA also challenges the Board's decision on the grounds that the Board committed legal errors in, allegedly, concluding that a "regional designation" can never be inherently distinctive, finding descriptiveness based on a trade dress, using a purchaser motivation test, and failing to resolve doubts as to descriptiveness in the applicant's favor.

### A.

 "In order to be registered, a mark must be capable of distinguishing the applicant's goods from those of others." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (*citing* 15 U.S.C. § 1052). A mark is "distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Id.* at 769, 112 S.Ct. 2753 (citation omitted). In the present case, MBNA does not argue that its marks MONTANA SERIES and PHILADELPHIA CARD have acquired distinctiveness through secondary meaning, and has not pursued registration under 15 U.S.C. § 1052(f) for such acquired distinctiveness. Rather, it contends that its marks are inherently distinctive.

 Marks are often classified, according to their increasing degree of inherent distinctiveness, as: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.* at 768, 112 S.Ct. 2753. Suggestive or arbitrary marks are deemed inherently distinctive and are entitled to registration as such; generic or descriptive marks are not. *Id.* Although the dividing lines are not always clear, the distinctions are critical in a registration determination. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 828 F.2d 1567, 1569 (Fed.Cir. 1987).

At the core of this appeal is the question whether MONTANA SERIES and PHILADELPHIA CARD are inherently distinctive, i.e., suggestive or arbitrary, or not inherently distinctive, i.e., merely descriptive. The Board affirmed the Examining Attorney's rejection of registration of the marks pursuant to Section 2(e)(1) of the Lanham Act, which provides that a trademark cannot be registered if it, "when used on or in connection with the goods of the applicant[,] is merely descriptive or deceptively misdescriptive of them." 15 U.S.C. § 1052(e)(1). Section 2(e)(1) also applies to a service mark, pursuant to Section 3 of the Act. *Id.* § 1053.

 A mark is merely descriptive if it immediately conveys information concerning a quality or characteristic of the product or service. *Nett Designs,* 236 F.3d at 1341. The perception of the relevant purchasing public sets the standard for determining descriptiveness. *Id.* Thus, a mark is merely descriptive if the ultimate consumers immediately associate it with a quality or characteristic of the product or service. On the other hand, "if a mark requires imagination, thought, and perception to arrive at the qualities or characteristics of the goods [or services], then the mark is suggestive." *Id.* The most inherently distinctive marks are arbitrary; they do not even suggest any of the qualities or characteristics of the goods or services.

Here, MBNA argues that MONTANA SERIES and PHILADELPHIA CARD are not merely descriptive, but suggestive or arbitrary, because they do not immediately convey information concerning MBNA's credit card services, such as the terms of financing, interest rates, the annual fee, the extended warranty program, rewards program, or other features of MBNA's financial services. The Board, however, found that MBNA provided not only financial services, but "regional affinity" credit card services—a financial service in conjunction with satisfying a social or lifestyle association with a particular city or state. Finding that the marks thus identified the community of intended users as well as the images on the plastic credit card itself, the Board found that the marks merely described significant features or characteristics of the affinity credit card services.

■ We agree with the Board that MBNA offers affinity credit card services, which are fundamentally different in scope from ordinary credit card services. MBNA specifically recites in its applications for the marks: "credit card services featuring credit cards depicting scenes or subject matter of, or relating to," the state of Montana, or the city of Philadelphia. MBNA notes that only upon the Examining Attorney's insistence did it amend the recitation for the services to expand beyond "credit card services." However, MBNA could not recite a service that it would not provide. Further, in the August 30, 1999, Office Action, the Examining Attorney, after suggesting the amendment for MBNA to overcome the Section 2(e)(2)

(geographically descriptive) and Section 2(e)(3) (geographically deceptively misdescriptive) rejections, specified that "the amended recitation of services will *not* negate the Section 2(e)(1) refusal discussed below." In the same Office Action, the Examining Attorney then reinstated his Section 2(e)(1) refusal on the ground that the proposed mark described a primary feature of the "credit card services" provided.[1] *Office Action* at 2 (Aug. 30, 1999).

Substantial evidence supports the Board finding that MBNA offers affinity credit card services. MBNA indeed offers, advertises, and provides affinity credit cards depicting subject matters appealing to groups with various geographic affinities. Here, the credit card specimens filed with the amendment in the MONTANA SERIES application depict a stereotypical Montana scene having a foreground of grasslands and a background of mountain peaks. Such association between credit card services and non-financial matters is not accidental, but rather the result of MBNA's strategic business planning and promotion. For example, in an advertisement for its "TEXAS SERIES" credit card services, MBNA not only depicts credit cards with various scenes from Texas but also includes the text: "Celebrate your pride in Texas with the Texas Series credit cards *and* a special low rate!" Thus, MBNA offers not simply financial services, but affinity credit card services providing both credit services *and* a feeling of social pride or connection through the particular affinity card with words and images identifying a particular city or state.

We further conclude that substantial evidence supports the Board finding that

---

1. We also note that MBNA was not obligated to amend the recitation and could have appealed the Examining Attorney's decision then if it was not willing to make the amendment. By amending instead of appealing, MBNA waived any issue of the propriety of the Examining Attorney's requirement of the amendment.

MONTANA SERIES and PHILADELPHIA CARD are merely descriptive of a significant feature or characteristic of the affinity credit card services, i.e., feeling of pride in identification with the specific regional location. The words MONTANA SERIES and PHILADELPHIA CARD are displayed prominently on MBNA's promotional materials. The appeal to regional pride and loyalties is a significant feature of MBNA's method of promoting and marketing these affinity credit cards as well as of the services themselves. Thus, to the consumers, MONTANA SERIES and PHILADELPHIA CARD immediately convey information about the specific regional affinity, or the user group to which these services are directed. One does not need "imagination, thought, and perception" to arrive at the conclusion that MONTANA SERIES is a series of cards featuring Montana and appealing to those who would like to have credit cards naming their favored state and depicting Montana scenes, and that PHILADELPHIA CARD features scenes of Philadelphia on the cards and appeals to those favoring Philadelphia and wishing to be identified with it. Thus, the two marks clearly are not suggestive. Neither are the marks arbitrary when used for the affinity credit card services because the marks describe which geographic region the affinity card concerns. The marks could be arbitrary, therefore inherently distinctive, only if used for purely financial services. However, here, the services are not simply credit card services but affinity credit card services featuring specific regional affiliations. We therefore conclude that substantial evidence supports the Board finding that MONTANA SERIES

and PHILADELPHIA CARD merely describe a significant feature of MBNA's affinity credit card services, as set forth expressly in the applications.[2] Indeed, the evidence of descriptiveness in not merely substantial, but conclusive.

### B.

MBNA argues that the Board made a number of legal errors in deciding the appeal. After reviewing each of MBNA's arguments, we conclude that the Board did not so err.

 First, MBNA argues that the Board erroneously concluded that a "regional designation" can never be inherently distinctive. MBNA's argument is an overstatement of the Board's reasoning. The Board did state: "a regional designation cannot logically be associated with one entrepreneur." To the extent this statement is interpreted as suggesting that a regional designation can never be inherently distinctive, the Board committed only harmless error. A regional designation can be inherently distinctive if it is not generic or does not merely describe a feature or characteristic of the goods or services for which the designation is used. Here, the Board did not state that MONTANA SERIES and PHILADELPHIA CARD could never be inherently distinctive; instead, the Board found that, for the services recited, these two marks were merely descriptive because they provided information designating specific regional affinities for MBNA's affinity credit card services. The Board's finding was not based on a conclusion that a "regional designation can never be inherently dis-

---

**2.** We do not rely on the Board's discussion of state and city names as "public symbols." Thus, whether the service marks in suit might

be refused registration on such grounds is not part of our decision. This question then awaits resolution another day in another case.

tinctive," and cannot fairly be so interpreted. Our conclusion that substantial evidence supports the Board's finding of mere descriptiveness is not based on the fact that the marks contain regional designations, but, rather, that the regional designations merely describe a feature or characteristic of the services.

Second, MBNA argues that the Board's finding of mere descriptiveness was based on MBNA's trade dress or designs used with the marks and its advertising materials, rather than on the credit card services identified in MBNA's applications. It is not disputed that descriptiveness must be determined in relation to the specific goods or services for which the registration is sought. *See* 15 U.S.C. § 1052(e)(1); Trademark Manual of Examining Procedure § 1209.03(e) (2003). However, MBNA's argument mischaracterizes the Board's reasoning. The Board specifically stated that it did not rely on trade dress to reach its conclusion of mere descriptiveness:

> We focus, as we must in making a determination under Section 2(e)(1), on applicant's recitals of services in these two applications. Each recital herein makes it clear that applicant's services feature credit cards "depicting scenes of [sic] subject matter of, or relating to, the state of Montana (or city of Philadelphia)." Thus, MONTANA (or PHILADELPHIA) immediately conveys information about the community of intended users to whom these particular services are directed.... Accordingly, we find that *even if the credit card itself had only the name MONTANA SERIES (i.e., absent the graphic trade dress), this term would still be merely descriptive of these credit card services.*

*MBNA Am. Bank,* 2002 WL 1285938, 2002 TTAB LEXIS 355, at *17–18 (em-

phasis added). The Board's finding of mere descriptiveness is indeed based on the services recited rather than the picture designs on the cards or on advertising. The Board did comment that the designs of stereotypical Montana or Philadelphia images reinforced the respective regional themes. The Board also discussed that MBNA's advertising materials were intended to evoke regional pride using picture designs and slogans. However, these statements described evidence for the finding that MBNA's credit card services, viewed as a whole, were affinity credit card services, not simply traditional financial services. Additionally, the Board correctly found MBNA's emphasis on the regional theme through marketing promotions and picture designs provides circumstantial evidence of how the relevant public perceives the marks in a commercial environment that already includes a background of affinity card services. Ultimately, it is the perception of the ultimate consumer that sets the standard for determining mere descriptiveness. *Nett Designs,* 236 F.3d at 1341. Thus, MBNA's advertising materials that promote the association of its credit card services with geographical affiliation are relevant to a determination of descriptiveness of the marks. We conclude that MBNA's argument that the Board's finding of descriptiveness is based on trade dress is not supported. Indeed, we accept the Board's express statement that it was relying on the applications.

MBNA further argues that the Board used a "purchaser motivation test," in violation of the law. The Lanham Act, in addressing the issue of cancellation of registration for marks due to various reasons, including that a registered mark has become generic, states: "[t]he primary significance of the registered mark to the

relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3). The purpose of this language was to overrule decisions that purported to create a new test for genericness which focused on a purchasers' motivation rather than understanding. *Magic Wand, Inc. v. RDB, Inc.,* 940 F.2d 638, 640 (Fed.Cir.1991); *see In re DC Comics, Inc.,* 689 F.2d 1042, 1054 (CCPA 1982) (Nies, J., concurring) ("The reason the public is motivated to buy the product ... is of concern to market researchers but is legally immaterial to the issue of whether a particular designation is generic.").

Here, the Board specifically stated that it agreed with MBNA that purchaser motivation may not play a part in finding mere descriptiveness. The Board indeed found that "irrespective of which card proves to be commercially successful ... (i.e., which one 'motivates' her to become a card holder), each designation immediately and forthwith conveys information as to a significant feature or characteristic of that particular credit card service." *MBNA Am. Bank,* 2002 WL 1285938, 2002 TTAB LEXIS 355, at *19–20. However, MBNA reads this statement as indicating a purchaser motivation test. MBNA further supports its position with the Board's rhetoric that, after MBNA has promoted the value of regional affinities, which were "a primary reason for the consumer's selection of a particular card," what could be "a more apt way to inform a consumer about the regional association than the exact geographical designation?" *Id.* 2002 WL 1285938, at *20. We conclude that MBNA's characterization of the Board analysis as using a purchaser motivation

test is misplaced. To the extent that the Board discussed the reason for a consumer's selection of a card, it was simply part of the Board's analysis of public perception of the words and images appealing to regional affinities, which led to the Board finding that the words describe significant features or characteristics of the affinity credit card services. Thus, a mere description of such feature or characteristic cannot be registered as a trademark.

MBNA lastly argues that the Board failed to resolve doubts as to mere descriptiveness in its favor. MBNA contends that doubts as to descriptiveness should be resolved in an applicant's favor because anyone who believes they may be damaged by registration of a merely descriptive mark may file a notice of opposition. *See Merrill Lynch,* 828 F.2d at 1571. We conclude that MBNA's legal argument does not apply here. The Board did not express any doubt in finding that MONTANA SERIES and PHILADELPHIA CARD merely described a feature or characteristic of MBNA's affinity credit card services. Without any indication by the Board that it entertained any doubt, the rule of resolving doubt in favor of the applicant does not apply.

## CONCLUSION

For the reasons set forth above, we conclude that the Board committed no legal error and that substantial evidence supports the Board finding that MONTANA SERIES and PHILADELPHIA CARD merely describe a feature or characteristic of MBNA's "credit card services featuring credit cards depicting scenes or subject matter of, or relating to," the state of Montana, or the city of Philadelphia, respectively. Accordingly, the decision of the Board is

*AFFIRMED.*

MAYER, Chief Judge, dissenting.

Because I believe the board's finding that MBNA's MONTANA SERIES and PHILADELPHIA CARD marks are merely descriptive of the recited services is not supported by substantial evidence, I dissent.

Both of MBNA's initial service mark registration applications for MONTANA SERIES and PHILADELPHIA CARD requested the registration of marks for credit card services. *Statement and Declaration for Service Mark Registration,* Serial Nos. 74/417,538 (July 21, 1993) and 74/472,908 (Nov. 23, 1993). Relying on MBNA's recitation of services in its two applications, the board determined that the recited services covered credit card services depicting scenes of subject matter of, or relating to, the state of Montana (or the city of Philadelphia). *In re MBNA Am. Bank, N.A.,* Serial Nos. 74/417,538 and 74/472,908, 2002 WL 1285938 (TTAB June 11, 2002). However, the record is replete with arguments from MBNA that it was seeking to register its marks for credit card services, not credit cards depicting scenes of Montana (Serial No. 74/417,538) or some geographical designation of its credit card services. *Statement and Declaration for Service Mark Registration* (July 21, 1993); *Amendment to Allege Use* (Apr. 4, 1994); *Response to Office Action dated January 10, 1994* at 4 (July 5, 1994); *Response to Office Action dated November 22, 1994* at 4 (May 22, 1995); *Request for Reconsideration* at 4 (Jan. 24, 1996). It was not until the August 30, 1999, office action that the recitation of services that the board relied on in its decision materialized. *Office Action* at 1 (Aug. 30, 1999). In that office action the examining attorney agreed to withdraw the geographically descriptive and geo-graphically deceptively misdescriptive refusals, if MBNA agreed to amend its recitation of services to read: "depicting scenes or subject matter of, or relating to the state of Montana." The examining attorney did note, however, that an amendment to the recitation of services would not negate a refusal under 15 U.S.C. § 1052(e)(1). But, such a refusal was not pending in the application at that time; it had been withdrawn earlier during prosecution. *Priority Action/Examiner's Amendment* (June 29, 1994). Although MBNA agreed to the examiner's amendment in order to expedite the registration, it asseverated that its marks were not merely descriptive of credit card services. *Response to Office Action dated August 30, 1999* at 2–3 (Feb. 29, 2000).

Guided by the record, I disagree that MBNA's marks are merely descriptive of a significant feature or characteristic of affinity credit card services. Accordingly, I would reverse the board's refusal to register under section 1052(e)(1) of the Lanham Act.