THIS DISPOSITION
IS CITABLE
AS PRECEDENT OF
THE TTAB

Hearing:                              Mailed:
20 October 2005                       31 January 2006
                                      AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Grand Forest Holdings Incorporated[1]
————————

Serial No. 78220033
————————

Patricia A. Wilczynski Brozek of Wilczynski Brozek Law for
Grand Forest Holdings Incorporated.

David C. Reihner, Trademark Examining Attorney, Law Office
111 (Craig D. Taylor, Managing Attorney).
————————

Before Quinn, Hohein, and Drost, Administrative Trademark
Judges.

Opinion by Drost, Administrative Trademark Judge:

On February 28, 2003, Grand Forest Holdings

Incorporated (applicant), a Canadian corporation, applied

to register the mark FREEDOM FRIES, in standard character

form, on the Principal Register for goods identified as

---

[1] The application was originally filed in the name of Irving Pulp
& Paper, Limited.  A document recording a change of name to the
current applicant was subsequently recorded at Reel/Frame No.
3117/0056.

"frozen French[2] fried potatoes" in Class 29.  The

application (Serial No. 78220033) is based on applicant's

allegation of a bona fide intention to use the mark in

commerce.  Applicant has disclaimed the term "Fries."

The examining attorney refused to register applicant's

mark on the ground that the mark is merely descriptive

under Section 2(e)(1) of the Trademark Act, 15 U.S.C.

§ 1052(e)(1), of applicant's goods.  The examining

attorney's position (Brief at 2-3) is set out below:

> After the United States military invasion in 2003 of
> Iraq, which was met with diplomatic opposition by the
> government of France, restaurants around the United
> States as well as restaurants and snack bars of the
> United States House of Representatives at the order of
> several members of the House, substituted the
> designation "freedom fries" for French fries as a
> symbolic gesture of displeasure with the government of
> France.  "Freedom fries" was dubbed the new name of
> the goods.  News about the new name for French fries
> and the events surrounding the adoption of the new
> name for the goods spread throughout the United
> States.  Evidence showing the publication of stories
> about the events and the trend of renaming French
> fries as "freedom fries" was presented to applicant in
> each Office Action in which registration was refused.
>
> The publicity about the renaming of French fries has
> been considerable.  Correspondingly, the purchasing
> public would recognize the designation FREEDOM FRIES
> as an alternate, albeit new, descriptive name for
> French fried potatoes.

---

[2] The capitalization of the word "French" from the quoted sources
was inconsistent.  We have chosen for consistency sake to spell
the word as "French" regardless of the original spelling.

Applicant responds to the examining attorney's refusal by arguing (Reply Br. at 3-4) (footnote omitted) that:

> There is no dispute that the term FREEDOM does not convey any direct information about the character of the goods in this case – "frozen French-fried potatoes…."
>
> Furthermore, the Examining attorney's conclusion that based on the evidence, *the consuming public* considers the mark FREEDOM FRIES a secondary or non-trademark designation for "frozen French fried potatoes," is incorrect.  Careful review of the pertinent evidence of record points in the exact opposite direction – that the consuming public does not consider the term to be an "alternative" designation for French fries.  There is NO TREND toward renaming French fries as suggested by the Examining attorney.  The pertinent articles of record were all written during a two month time-span, two years ago, at the start of the war and even these articles evidence the *unwillingness* of the *consuming public to adopt the terminology.*  The evidence of record demonstrates that prepared and ready to consume French fries have not been renamed on menus and other packaging and there is absolutely no evidence at all pertaining to the descriptive use of the term FREEDOM FRIES for frozen vegetables – the goods at issue being "frozen French-fried potatoes.

After the examining attorney made the refusal final, applicant appealed to this board.  An oral hearing was held October 20, 2005.

A mark is merely descriptive if it immediately describes the ingredients, qualities, or characteristics of the goods or services or if it conveys information regarding a significant function, purpose, or use of the goods or services.  In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978).  See also In re

3

MBNA America Bank N.A., 340 F.3d 1328, 67 USPQ2d 1778, 1780 (Fed. Cir. 2003) (A "mark is merely descriptive if the ultimate consumers immediately associate it with a quality or characteristic of the product or service"); In re Nett Designs, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). We look at the mark in relation to the goods or services, and not in the abstract, when we consider whether the mark is descriptive. Abcor, 200 USPQ at 218.

The examining attorney has included numerous references to support his position that the term FREEDOM FRIES is merely descriptive when it is used on frozen French fried potatoes. Perhaps the most illuminating one is an entry in Wikipedia, an online encyclopedia. Highlights from the article are set out below:

> Freedom Fries, more commonly known as French fries, are potatoes that have been cut and deep-fried. On March 11, 2003, Representatives Robert W. Ney and Walter Jones declared that all references to "French fries" and "French toast" on the menus of the restaurants and snack bars run by the House of Representatives would be removed. House cafeterias were ordered to re-name French fries as *freedom fries.*" This action was carried out without a congressional vote, under the authority of Congressman Ney's position as Chairman of the Committee on House Administration, which oversees restaurant operations in the house.
>
> Throughout the international debate prior to the 2003 invasion of Iraq, France expressed opposition to the US insistence on military action.

According to a statement released by Ney, this move was a symbolic effort to express displeasure with France's "continued refusal to stand with their U.S. allies" (see Iraq disarmament crisis). The statement further read: "This action today is a small, but symbolic, effort to show the strong displeasure many on Capitol Hill have with our so-called ally, France."

Congressmen Ney and Jones, however, were not the first to re-name French fries as freedom fries. A number of private restaurants across the country started the renaming movement. Neal Rowland, owner of the privately owned fast-food restaurant Cubbie's in Beaufort, North Carolina, decided to sell his fried potato strips under the name "freedom fries." Rowland claimed that his intent was not to slight the French people, but to be patriotic and support President George W. Bush. Many of Rowland's customers were among the local military troops.

The word play is reminiscent of anti-German sentiment during the First World War in which sauerkraut was renamed liberty cabbage, and hamburgers were transformed into *liberty steaks*. (Even the German measles got a new name: *liberty measles*.) This similarity is intentional: Rowland described a conversation about these renamed foods during World War I as the inspiration for "freedom fries."[3]

The earliest story is a www.cnn.com article dated February 19, 2003. The article is entitled "Fried politics: Restaurant serves 'freedom fries'" and it goes on to explain: "You can get fries with your burger at a restaurant here, but just don't ask for French fries. Neal Rowland, the owner of Cubbie's now only sells his fried

---

[3] Subsequently, applicant submitted an update of the Wikipedia website that now identifies "Freedom fries" as a "short-lived name used in the United States for French fries."

potato strips as 'freedom fries' – a decision that comes as Americans watch French officials back away from support for possible war in Iraq."

Other entries include a page from www.ydr.com dated May 6, 2003 that asks: "Do you think we should be calling French fries 'Freedom Fries,' and do you think this name will continue to be used?" An article in the *Austin Business Journal* dated March 14, 2003, contains the following sentence: "Joining a symbolic effort to support the U.S. military and protest France's stance on a potential war against Iraq, Fuddruckers President Bryce King says 'Freedom Fries' will replace 'French fries' on menus in the 200-plus Fuddruckers restaurants around the country."

An article from the *Pittsburgh Post-Gazette* dated March 12, 2003, refers to "resentment over the French government's opposition to the push toward war has triggered changes to menus across the country… 'Everybody loves it,' Davis said. They tell him the change is very patriotic. He says sales of freedom fries and freedom toast have picked up since he put the signs in the window." The *Winchester Star* dated March 29, 2003, reports that the Amherst Diner "servers consistently have corrected customers ordering French toast or French fries about the

6

new name. 'I correct them. I say, You mean freedom fries.'" A www.cnn.com article dated March 11, 2003, has the headline "No 'freedom fries' in the French Quarter" that begins: "Don't expect to find 'freedom fries' here." A website called American-freedom-fries.com solicits "support to make a PERMANENT name change to Freedom Fries."

More recent articles include:

The French were excoriated by every radio jock in the nation. French wine was poured down gutters. French fries came out of fryers as 'freedom fries.'"
*Providence Journal*, February 25, 2004.

American citizens show their disdain for all things French by boycotting French wines, calling French fries "freedom fries…"
*Akron Beacon Journal*, January 1, 2004.

To chide France for not backing the Iraq invasion, some restaurants changed the name of French Fries to Freedom Fries.
*Hartford Courant*, December 31, 2003.

Call them freedom fries or French fries, but the fast-food staples aren't making it to the plate like they used to as Americans struggle to lose weight.
*USA Today*, September 29, 2003.

French fries became freedom fries and France, Germany and Belgium became "chocolate factory countries."
*Press Journal (Vero Beach, FL)*, September 14, 2003.

Applicant responds by including menus from several restaurants such as McDonald's, Burger King, and Wendy's that show that these restaurants have not changed the name of French fries on their menus and that many of the

7

articles refer to restaurants that did not change their menus to reflect the name "Freedom Fries."

When we look at the evidence of record, we cannot conclude that the term FREEDOM FRIES is merely descriptive when applied to frozen French fried potatoes. First, there is no indication that the term "Freedom" has any meaning in relation to French fries. The examining attorney relies on the case of In re Lamb-Weston Inc., 54 USPQ2d 1190 (TTAB 2000). However, in that case, there was evidence that the term "Natural Cut Fries" was used to describe a type of "fries with skins on." Id. at 1191. Here, there is no evidence that there is a subcategory of fries known as "Freedom Fries."

Second, the examining attorney argues that "'Freedom Fries' is a known secondary name for French fried potatoes. It was coined as a new name for French fried potatoes (the goods themselves). Although it has not become the primary or generic name of the goods, 'freedom fries' identifies French fries and as such is merely descriptive of the goods because it names the goods in a secondary manner." Brief at 5. At this point, we part company from the examining attorney's analysis. We must consider the question of descriptiveness in light of the evidence of record. We cannot agree with the examining attorney that the evidence

8

of "renaming of French fries has been considerable" or that there is a "current trend of renaming French fries as 'freedom fries.'" Brief at 3. The evidence seems to indicate that there was a movement during the first half of 2003 to refer to "French fries" as "Freedom fries." It appears to have begun in a restaurant in North Carolina named Cubbie's. Shortly afterwards, the U.S. House of Representatives changed its cafeteria menu to reflect the change. The evidence then shows that the restaurant chain Fuddruckers announced that it was changing the name of French fries to Freedom Fries and a few other restaurants likewise announced or made similar changes. Beyond that point, the references to "Freedom Fries" appear to be scattered, with little evidence of actual acceptance of the term as the name of the goods or as a term merely descriptive of the goods. Several articles indicate a disagreement with the proposed change, such as a www.ydr.com article dated August 6, 2004, while others are satirical, such as the *Milwaukee Urban Star* article. We have no quarrel with the proposition that the same food item may have several names. For example, a large overstuffed sandwich may be referred to as a "grinder,"[4] "hoagie" or "hoagy," "submarine," or "hero sandwich."[5]

---

[4] In re Mario's, 182 USPQ 512 (TTAB 1974).

Certainly, when a product changes, new generic names often result:

> Moreover, these are ordinary words [SPACE SHUTTLE] which would be and are perceived by the public in their primary significance as a space vehicle which transports crew and equipment from the ground to Earth orbit and returns, and not as an indication of origin. That is, it is a shuttle which goes into space. The term is an apt and common description of NASA's space vehicle or system. Although opposer was and remains the only space agency to make a reusable space shuttle, the record fully supports the conclusion that this term is used and understood by the public as referring to the genus or classification of reusable spacecraft.

National Aeronautics and Space Administration v. Bully Hill Vineyards Inc., 3 USPQ2d 1671, 1676 (TTAB 1987). See also Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 43 USPQ2d 1734, 1743 (2d Cir. 1997) ("Because the addition of the word 'honey' is necessary to indicate a brown ale that is brewed with honey, Stroh has the right to call its beer a 'Honey Brown Ale'").

Unlike the referenced descriptive uses of the terms "Space Shuttle" and "Honey Brown Ale," the involved use of

---

[5] "A large sandwich, usually consisting of a small loaf of bread or long roll cut in half lengthwise and containing a variety of ingredients, as meat, cheese, lettuce, and tomatoes. *The Random House Dictionary of the English Language (unabridged)* (2d ed. 1987) (Regional variations include "submarine" and "hoagy" or "hoagie"). We take judicial notice of this definition. University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

the word "freedom" does not describe French fries in any way. While undoubtedly there was a movement underway at one point to change the name of French fries, we have little evidence that would let us conclude that the effort has met with much success. A few press releases, news stories, and a handful of examples of restaurant menu changes are simply not sufficient evidence to support a refusal to register the term as merely descriptive. For example, one article entitled "Land of the Freedom Fries" claims that a "few restaurants on the east coast have stopped selling French fries." www.collegeclub.com. The number of restaurants besides the Fuddruckers chain that are actually identified as having changed the name of their menu items from French fries to Freedom Fries is not very significant.

We are mindful that manufacturers, standard-setting organizations, protesters, and others have an interest in establishing generic names for goods and services. See, e.g., *McCarthy's on Trademarks and Unfair Competition*, § 12.26 (4th ed. 2005):

> When a new and unfamiliar product hits the market, precautions must be immediately taken to protect the trademark significance of a mark to prevent its becoming generic. The seller has some options. It may devise a generic name for the product and use as a trademark a mark which has been previously used on other goods. For example, if Jackson Industries, Inc.

> proposes to market a new and revolutionary type of miniaturized two-way radio telephone of wrist-watch size, it could market it as the JACKSON brand "Radon."

Obviously, this need would be frustrated if the announcement of this new generic or descriptive term was accompanied by a rush to the U.S. Patent and Trademark Office by others to register the name. At the same time, we cannot refuse registration on the ground that a term might become generic or merely descriptive in the future. See, e.g., 15 U.S.C. § 1052(e) ("Consists of a mark which, (1) when used on or in connection with the goods of the applicant *is* merely descriptive") (emphasis added). Furthermore, in these cases, "any doubt with respect to the issue of descriptiveness should be resolved in applicant's behalf." In re Grand Metropolitan Foodservice Inc., 30 USPQ2d 1974, 1976 (TTAB 1994).

What we lack in this case is significant evidence that, when prospective purchasers encounter the term FREEDOM FRIES used on frozen French fried potatoes, they will immediately understand that it identifies a feature, quality, or characteristic of applicant's goods or that it is a secondary name of applicant's goods. Therefore, we resolve our doubts in applicant's favor.

Decision: The refusal to register under Section 2(e)(1) of the Trademark Act is reversed.