THIS DISPOSITION
IS CITABLE
AS PRECEDENT OF
THE TTAB

Mailed:
15 February 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Promo Ink
————————

Serial No. 76541018
————————

Donna Bogatin, pro se for Promo Ink.

Yong Oh (Richard) Kim, Trademark Examining Attorney, Law Office 115 (Tomas V. Vlcek, Managing Attorney).
————————

Before Quinn, Drost, and Kuhlke, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On August 29, 2003, applicant, Promo Ink, a sole proprietorship with Donna Bogatin listed as the sole proprietor, applied to register the mark PARTY AT A DISCOUNT! (standard character form) on the Principal Register for services identified as "preparation and dissemination for others of advertising and promotional matter via global computer communications networks in the field of shopping for goods and services" in Class 35.  The

application (No. 76541018) is based on applicant's allegation of a bona fide intention to use the mark in commerce.

The examiner has refused registration on the ground that applicant's mark when used in association with applicant's services is merely descriptive. 15 U.S.C. § 1052(e)(1). The examining attorney's position is that the mark, "from the plain meaning of the words, PARTY AT A DISCOUNT!, taken as a whole, merely describes the purpose of Applicant's services, i.e., to advertise parties offered at a discount." Brief at 2.

Applicant argues (Brief at 1):

As the above noted diverse dictionary definitions for the word "party" cited by the examining attorney in his Office Action clearly confirm that 1) the word "party" has diverse meanings and 2) the word "party" can be used and understood in many different ways and 3) the word "party" can function as a noun, or an adjective, or a verb, the use of the word "Party" in a mark does not automatically or exclusively describe "a group of people who have gathered to participate in an activity."

As cited by Applicant in Appeal dated February 10, 2005, dictionary definitions of the word "Party" include "To take intense pleasure" and "Revel" and the use of the word "Party" in the imperative phrase "Party at a discount!" suggests and encourages pleasure of any and all kinds, without regard to place, activity (or lack thereof) or number(s) of persons involved.

After the examining attorney made the refusal final, this appeal followed.

We begin our discussion by addressing applicant's objection to the examining attorney's evidence. In the first and second Office actions, the examining attorney attached Internet printouts that the examining attorney described as being from "applicant's websites." First Office Action at 3; Second Office Action at 2. Two examples are set out below.





An example of the language in the fine print at the bottom of one of the pages is set out below: "(c) 2003 PROMO Ink™" and "All Web site design, text, and selection, arrangement thereof, are copyrighted works of PROMO Ink. Urban Savings, Urban Directions, Life at a Discount, Urban Coupons, Urban $avers, Savin' Maven, Metro Luxe, Party at a Discount are TMs of PROMO Ink."

Applicant objects to the Internet printouts:

The application was a Section 1(b), Intent to Use application and, accordingly, did not contain any Specimen of Use. The examining attorney did not heed applicant's correctly filed Intent to Use application and improperly sought to "produce" a specimen and then append applicant's properly filed Intent to Use application with a "specimen" that the examining attorney created himself.

> TMEP 904 "specimens" states "In an application for registration under 1(b) of the Trademark Act, no specimen is required at the time the application is filed" and TMEP 905 "Method of Use" states "The applicant is not required to specify the method or intended method of use of a mark, in an application under 1(a) or 1(b) of the Act."

Reply Brief at 1.

The examining attorney points to the language at the bottom of the printout to demonstrate that the pages are indeed from applicant's website.

An applicant who is actually using its mark may, for various reasons, choose to file an intent-to-use application. *McCarthy on Trademarks and Unfair Competition* (4th ed. 2005) § 19:13. In addition, an intent-to-use applicant may begin using its mark during the examination of the application. If an intent-to-use application is filed, the applicant is not required to meet the requirements of use-based applications during the initial examination of the application. However, the fact that applicant has filed an intent-to-use application does not limit the examining attorney's evidentiary options, nor does it shield an applicant from producing evidence that it may have in its possession. Trademark Rule 2.61(b) (37 CFR 2.61(b)) provides that: "The examiner may require the applicant to furnish such information and exhibits as may be reasonably necessary to the proper examination of the

5

application." This provision is equally applicable to intent-to-use applicants. TMEP § 814 (4th ed. April 2005) ("The examining attorney may request literature, exhibits, and general information concerning circumstances surrounding the mark and, if applicable, *its use or intended use*") (emphasis added). See In re SPX Corp., 63 USPQ2d 1592, 1597 (TTAB 2002) (Board affirmed a refusal based on an intent-to-use applicant's failure to respond to the examining attorney's requirement for information); In re DTI Partnership LLP, 67 USPQ2d 1699, 1700 n.2 (TTAB 2003)("Nor did [the intent-to-use] applicant comply with, or even acknowledge, the Trademark Examining Attorney's specific requirements for submission of advertising or promotional materials and for a description of the nature, purpose and channels of trade of the goods"). If the examining attorney had made this requirement in this case, applicant would have been required to produce, if it existed, evidence of the type that the examining attorney's Internet search revealed. The evidence was found as a result of an Internet search and it was, therefore, properly submitted by the examining attorney. TMEP § 701.01(b) (4th ed. April 2005) ("Articles downloaded from the Internet are admissible as evidence of information

6

available to the general public, and of the way in which a term is being used by the public").

We also note that applicant does not raise any point that would indicate that there is any problem with the nature of the printouts themselves. Applicant's objection is that the examining attorney is producing a specimen for applicant, which he clearly is not doing. The examining attorney is using the printouts as evidence that the mark is merely descriptive of applicant's services. Accord In re Remacle, 66 USPQ2d 1222, 1224 n.5 (TTAB 2002) (Particularly in the case before us, involving sophisticated medical technology, it is reasonable to consider a relevant article from an Internet web site, in English, about medical research in another country, Great Britain in this case, because that research is likely to be of interest worldwide regardless of its country of origin"). The examining attorney could have introduced evidence of other parties' use of the term that he discovered on the Internet, and he is also permitted to introduce evidence that applicant's own literature supports the descriptive nature of the term. It is also clear that the examining attorney is not requiring applicant's intent-to-use application to meet the requirements of a use-based

application. Therefore, we overrule applicant's objection to the printouts.

A second preliminary matter that we address is the examining attorney's objection to applicant's reference to six registrations in its brief and reply brief. We sustain this objection for two reasons. First, the submission of this evidence for the first time in applicant's briefs is untimely. 37 CFR § 2.142(d). Second, if applicants or examining attorneys would like to rely on third-party registrations for support of their position, they must submit a copy of those registrations. Simply providing a list of registrations is not sufficient. In re Duofold, Inc., 184 USPQ 638, 640 (TTAB 1974) ("[T]he submission of a list of registrations is insufficient to make them of record"). Applicant did not do that in this case and, therefore, we will not consider as evidence the registrations listed in applicant's briefs.

We now address the central issue in this case, whether the mark PARTY AT A DISCOUNT! is merely descriptive when used in association with the identified services. A mark is merely descriptive if it immediately describes the ingredients, qualities, or characteristics of the goods or services or if it conveys information regarding a function, purpose, or use of the goods or

8

services.  In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978).  See also In re Nett Designs, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).  To be "merely descriptive," a term need only describe a single significant quality or property of the goods or services.  In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009, 1009 (Fed. Cir. 1987); In re MBNA America Bank N.A., 340 F.3d 1328, 67 USPQ2d 1778, 1780 (Fed. Cir. 2003) (A "mark is merely descriptive if the ultimate consumers immediately associate it with a quality or characteristic of the product or service").  We look at the mark in relation to the goods or services, and not in the abstract, when we consider whether the mark is merely descriptive.  Abcor, 200 USPQ at 218.

In order to show that applicant's mark is merely descriptive, the examining attorney has submitted definitions of the terms, "party" and "discount."  First Office Action at 2.  Relevant excerpts from these definitions are set out below.

> Party –
> (Noun) A social gathering especially for pleasure or amusement:  *a cocktail party*.  A group of people who have gathered to participate in an activity.
> (Verb) – To celebrate or carouse at or as if at a party:  *That night we partied until dawn*.
>
> Discount –

A reduction from the full or standard amount of a price or debt.

Applicant's services involve the preparation and dissemination for others of advertising and promotional matter via global computer communications networks in the field of shopping for goods and services. The Internet evidence shows that there are services that involve disseminating promotional information that feature discount coupons for parties.

The Internet evidence shows that a significant feature of the services involves discounts for parties. The printouts refer to "'Top Values' for private parties in New York City." The following are listed under "Hot Deals:"

John's of 12th Street - $50 Gift Certificate with party.

Buona Notte Ristorante – FREE Wine with Party

44sw Ristorante & Lounge – FREE Sangria with Party

Stella Del Mare - $100 Gift Certificate with Party

O'Reilly's Townhouse Restaurant - $50 Gift Certificate with Party

Another page features the SNAFU Bar & Lounge. The page contains the following information:

Throw your own party!
Private Candlelit Lounge see coupon below

$20 OPEN BAR 2-Hour Party
Per Person, 20 People Min., Complimentary for
Organizer

Potential customers encountering a service that offers them the opportunity to have a party at a restaurant or lounge and receive a reduced rate or complimentary food and/or beverages would immediately understand that the term exactly describes the services, i.e., that the services involve parties at a discount.  Therefore, applicant's mark is merely descriptive of the identified services.

Applicant points out that there are numerous meanings of the words in the mark.  However, we must look at the use of the mark in the context of the services.

> Similarly, that applicant can take the dictionary definitions of the individual words in the term and come up with a meaning that makes no sense in connection with the services recited in the application does not mandate a different conclusion on the issue of mere descriptiveness.  As stated above, the determination of descriptiveness is made in the context of the identified services, and the meaning of "ETHNIC ACCENTS" in connection with applicant's services is clearly that of home furnishings or decorations relating to various ethnicities.

In re Ethnic Home Lifestyles Corp., 70 USPQ2d 1156, 1159 (TTAB 2003).  When prospective customers encounter the term PARTY AT A DISCOUNT! for services that disseminate for others promotional matter advertising discounts for parties at restaurants and lounges, they will immediately understand that the mark is describing a significant feature of the services and not simply a suggestion of "pleasure of any and all kinds."

We also have considered that applicant's mark contains an exclamation point, but this punctuation mark does not significantly change the commercial impression of the mark. It would simply emphasize the descriptive nature of the mark to prospective purchasers, i.e., that customers can receive discounts for their parties. In re Samuel Moore & Co., 195 USPQ 237, 240 (TTAB 1977) ("Applicant has not cited nor have we found any case where it was held that a common punctuation mark, such as an exclamation point, was sufficient to elevate an otherwise merely descriptive term to the status of a registrable trademark. We do not do so in this case"); In re S.D. Fabrics, Inc., 223 USPQ 54, 55 (TTAB 1984) ("Aside therefrom, we are not persuaded that the design features of applicant's mark, namely, the filling in of portions of some of the letters in the mark and the separation of the two words of the mark with a conventional punctuation mark, are so distinctive as to create a commercial impression separate and apart from the unregistrable components"). There is no reason in this case to conclude that the punctuation mark here changes a descriptive mark into a non-descriptive mark.

Ultimately, we conclude that PARTY AT A DISCOUNT! for the services of preparation and dissemination for others of advertising and promotional matter via global computer

communications networks in the field of shopping for goods and services is merely descriptive.

Decision:  The examining attorney's refusal to register the term on the ground that the mark is merely descriptive of the involved services is affirmed.