THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed: February 15, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Hunter Fan Company
————————

Serial No. 78195616
————————

Valerie Walsh Johnson of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. for Hunter Fan Company.

Tonja M. Gaskins, Trademark Examining Attorney, Law Office 112 (Janice O'Lear, Managing Attorney).
————————

Before Walters, Rogers and Kuhlke, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Hunter Fan Company has filed an application to register ERGONOMIC (in standard character form) on the Principal Register for "ceiling fans" in International Class 11.[1]

———————————

[1] Application Serial No. 78195616, filed December 18, 2002. The application was originally filed based on use in commerce under Section 1(a) of the Trademark Act, but was later amended to seek registration on the basis of a bona fide intent to use the mark in commerce under Section 1(b) of the Trademark Act. 15 U.S.C. §1051. Under Trademark Rule 2.35 applicants may add or substitute a basis.

The examining attorney refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark is merely descriptive of its goods.

When the refusal was made final, applicant appealed and requested reconsideration of the final decision. On February 22, 2005, the examining attorney denied the request for reconsideration and the appeal was resumed. Briefs have been filed, but applicant did not request an oral hearing. We affirm the refusal to register.

"A mark is merely descriptive if it 'consist[s] merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." In re Oppedahl & Larson LLP, 373 F.3d 1171, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004), quoting, Estate of P.D. Beckwith, Inc. v. Commissioner, 252 U.S. 538, 543 (1920). See also In re MBNA America Bank N.A., 340 F.3d 1328, 67 USPQ2d 1778, 1780 (Fed. Cir. 2003). The test for determining whether a mark is merely descriptive is whether it immediately conveys information concerning a significant quality, characteristic, function, ingredient, attribute or feature of the product or service in connection with which it is used, or intended to be used. In re Engineering Systems Corp., 2 USPQ2d 1075 (TTAB 1986); In re Bright-

Crest, Ltd., 204 USPQ 591 (TTAB 1979). It is not necessary, in order to find a mark merely descriptive, that the mark describe each feature of the goods or services, only that it describe a single significant ingredient, quality, characteristic, function, feature, purpose or use of the goods. In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987). Further, it is well-established that the determination of mere descriptiveness must be made not in the abstract or on the basis of guesswork, but in relation to the goods or services for which registration is sought, the context in which the mark is used, and the impact that it is likely to make on the average purchaser of such goods or services. In re Abcor Dev. Corp., 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978).

The examining attorney contends that the proposed mark ERGONOMIC is merely descriptive of a significant feature of the goods, specifically that the goods feature an "ergonomic design." Br. p. 5. In support of this argument, the examining attorney submitted printouts of the following excerpts from third-party websites where the term "ergonomic" was used to describe a third-party's or applicant's ceiling fans.

> Setting a new style standard, the eMotion
> combines form, function, and innovation. Its
> friendly ergonomic design featuring a highly

3

polished surface, semi-transparent colored housing and matching blade tip accents will add a distinct flavor to most environments. www.farreys.com/ceiling_fans/minka_aire/emotion_ fan.html.

A ceiling fan with a whimsical ergonomic design. Housing in white and semi-transparent graphite finish and 5 white blades with matching graphite tips. www.lightingstoreusa.com/shopsite_ sc/store/html/page1.

Hunter Ergonomic Ceiling Fan
Get remote control convenience with this contemporary ergonomically designed fan. www.jungleblurbs.com/overstock/Hunter-Ergonomic-908530.shtml.

Hunter
56 In. Brushed Nickel Ergonomic Ceiling Fan with Remote Control and Light Kit. www.homedepot.com.

In arguing that its proposed mark is not descriptive, applicant contends that the dictionary definitions of the word "ergonomic" support a finding that the term, while possibly descriptive for goods such as computer keyboards, is not descriptive of devices, including ceiling fans, that do not directly interact with a human user in a manner that reduces operator fatigue or discomfort. Several dictionary definitions of the words ergonomics and ergonomic were made of record and a representative sample is set forth below.

Ergonomics: The science concerned with designing safe and comfortable machines for humans. For example, one branch of ergonomics deals with designing furniture that avoids causing backaches and muscle cramps. In the computer field,

4

ergonomics plays an important role in the design of monitors and keyboards. http://www.pcwebopaedia.com.

Ergonomics:  The engineering science concerned with the physical and psychological relationship between machines and the people who use them. The ergonomicist takes an empirical approach to the study of human-machine interactions.  The objective is to improve the efficiency of operation by taking into account a typical person's size, strength, speed, visual acuity, and physiological stresses, such as speed of decision making, and demands on memory and perception.  Applications range from the design of work areas (including the office furniture, automobile interiors, and aircraft cockpits) to the disposition of switches and gauges on the control panels of machinery to determining the size, shape, and layout of keys on computer terminals and character height, color, and clarity on video displays. http://encyclopedia.com.

Ergonomic 1. (used with a sing. verb) The applied science of equipment design, as for the workplace, intended to maximize productivity by reducing operator fatigue and discomfort.  Also called biotechnology, human engineering, human factors engineering.  2. (used with a p. verb) Design factors, as for the workplace, intended to maximize productivity by minimizing operator fatigue and discomfort:  The ergonomics of the new office were felt to be optimal. The American Heritage Dictionary of the English Language (4th ed. 2000).

Ergonomic:  An applied science concerned with designing and arranging things people use so that the people and things interact most efficiently and safely – called also human engineering. Merriam Webster Dictionary (2004).

In this case, we are persuaded that the term

"ergonomic" when used in connection with ceiling fans would

immediately inform potential consumers that the fans are designed to "interact efficiently and safely" with the user, in a way that makes it easier to use and beneficial to the user's living environment.  Contrary to applicant's argument, the definitions of record support this finding.  See e.g., "An applied science concerned with the characteristics of people that need to be considered in the design of devices and systems in order that people and things will interact efficiently and safely."  Merriam Webster Dictionary (2004); "The engineering science concerned with the physical and psychological relationship between machines and the people who use them." http//encyclopedia.com.  Moreover, the examining attorney's paraphrase, "to make their use easier," of the definitions (Office Action p. 3 (June 24, 2003)) is encompassed by the broad definitions of the term in this record.

We have considered applicant's argument that this term can only be descriptive of a device that directly interacts with an human user in a manner that reduces operator fatigue or discomfort.  However, we see no difference in the level of interaction between the user of on and off switches and gauges, and the user of a ceiling fan.  A ceiling fan is a device that people interact with by turning it on and off.  Moreover, as shown by the

definitions, people "interact" with devices in a physical and psychological manner.

Certainly, the remote control, featured in the specimen of use, allows the user to "interact" more "efficiently and safely" with the ceiling fans, inasmuch as the user may control the fan from anywhere in the room with minimal physical effort and at a safe distance from the blades. Indeed, applicant's own use of the term ERGONOMIC, included as merely one other descriptor in a laundry list of descriptors, (56", brushed nickel, integrated lighting, wireless remote control) as evidenced by the specimen of use in the application, highlights the descriptive nature of this term used in connection with applicant's ceiling fans.[2]

Applicant further argues that the examples of use of the term "ergonomic" submitted by the examining attorney "do not reflect an industry consensus and do not demonstrate that ERGONOMIC is merely descriptive of ceiling fans." Request for Recon. p. 2. However, a word need not be in common use in an industry to be descriptive, and the mere fact that an applicant is the first to use a descriptive term in connection with its goods, does not

imbue the term with source-identifying significance. In re National Shooting Sports Foundation, Inc., 219 USPQ 1018, 1020 (TTAB 1983) (the fact that the applicant may be the first to use a merely descriptive designation does not "justify registration if the term projects only merely descriptive significance."). Here, of course, there is evidence that applicant is not the only entity that uses the term "ergonomic" to describe their fans. While the limited number of examples may not support a finding that there is common use of the term in the ceiling fan industry, they are illustrative of descriptive use in connection with some, including applicant's, ceiling fans. Therefore, the applicant's evidence, in the form of excerpts from third-party websites, submitted to show that the term "ergonomic" is not "in common usage as a description of ceiling fans" (Br. p. 7), and argument that because this term is not commonly used in the industry prospective "purchasers are unlikely to perceive applicant's ERGONOMIC mark as merely descriptive of ceiling fans" (id.), do not serve to rebut the examining attorney's position.

---

[2] We note that even though applicant changed the basis from Section 1(a) to Section 1(b), the specimen submitted in support of the Section 1(a) basis still remains part of the record.

Finally, applicant's argument that the term is not descriptive as evidenced by a third-party registration for the mark SETTING THE ERGONOMIC STANDARD for use with furniture registered without a disclaimer of the term ergonomic, is not persuasive.[3] We cannot draw any conclusion that the term is registrable based on a single third-party registration. Moreover, it is well settled that each case must be decided on its own facts and the Board is not bound by prior decisions involving different records. See In re Nett Designs, Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); In re Merrill Lynch, Pierce, Fenner & Smith Inc., 828 F.2d 1567, 4 USPQ2d 1141 (Fed. Cir. 1987); In re Lean Line, Inc., 229 USPQ 781 (TTAB 1986). A mark that is merely descriptive should not be registered on the Principal Register simply because other such marks appear on the register. In re Scholastic Testing Service, Inc., 196 USPQ 517 (TTAB 1977). In any event, the mark in the prior registration appears to be a unitary slogan, and an examining attorney has discretion to not require a disclaimer of a descriptive term when it appears in such a slogan. See TMEP §1213.05(b) (4th ed. 2005). While applicant contends the absence of a

---

[3] Trademark Electronic Search System (TESS) printout of Registration No. 2283744.

disclaimer in the registration is evidence the word ergonomic is not descriptive, it is just as plausible that the examining attorney did not require a disclaimer because the mark was viewed as a unitary slogan.

In summary, when applied to applicant's goods, the term ERGONOMIC immediately describes, without need for conjecture or speculation, a significant feature or function of applicant's goods, namely, ceiling fans that are designed to operate and "interact efficiently and safely" with the user and in a fashion that addresses the physical and psychological relationship between the goods and the user.

**Decision**: The refusal to register is affirmed.