**HEWLETT–PACKARD COMPANY, Appellant,**

v.

**PACKARD PRESS, INC. (formerly Packquisition Corporation), Appellee.**

No. 01–1276.

United States Court of Appeals, Federal Circuit.

March 1, 2002.

Elizabeth A. Sheets, Hewlett–Packard Company, of Palo Alto, CA, for appellant.

Before CLEVENGER, RADER, and DYK, Circuit Judges.

RADER, Circuit Judge.

The United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (Board) dismissed Hewlett Packard Company's (HP's) opposition to Packard Press, Inc.'s (Packard Press's) application for registration of the mark PACKARD TECHNOLOGIES for data processing and data transmission services. Because no substantial evidence of record supports the Board's conclusion that the parties' goods and services are not sufficiently related to warrant a finding of likelihood of confusion between the PACKARD TECHNOLOGIES mark and HP's HEWLETT PACKARD marks, and because likelihood of confusion has been established as a matter of law, this court reverses.

I.

HP owns multiple federal registrations for the marks HEWLETT PACKARD, HEWLETT PACKARD, and HEWLETT PACKARD and design for a variety of specified goods and services. *See* Reg. Nos. 1,861,560, 1,732,962, 1,014,357, 1,850,-493, 1,096,556, and 1,710,346. The specified goods include, among others, computers,

data processing and data storage systems, data acquisition systems, printers and printer accessories, facsimile machines, computer software, and publications regarding data processing products. The specified services include, among others, consulting services for data processing products, rental and leasing services for data processing equipment, maintenance and repair of data processing equipment, and retail mail and telephone order services for data processing products.

Packard Press specializes as a commercial printer for legal, municipal, and financial enterprises. Packard Press markets its printing services under the federally registered marks PACKARD (stylized), Reg. No. 1,828,225, and PACKARD PRESS, Reg. Nos. 1,816,811 and 1,385,567. In October 1995, Packard Press filed intent-to-use (ITU) application number 75/000,036 to register the service mark PACKARD TECHNOLOGIES, disclaiming the word "Technologies." In its application, Packard Press seeks registration of PACKARD TECHNOLOGIES for data and information processing, electronic transmission of data and documents via computer terminals, and electronic transmission of messages and data. Additionally, Packard Press seeks registration of PACKARD TECHNOLOGIES for "data and digital information (media duplication of)" and "conversion from one media form to another media (document data transfer and physical)."

HP filed an opposition, under section 2(d) of the Trademark Act, to the registration of the PACKARD TECHNOLOGIES mark, arguing that the mark was confusingly similar to thirteen of HP's previously registered HEWLETT PACKARD marks. Based on a likelihood of confusion, the Board sustained HP's opposition. *Hewlett Packard Co. v. Packquisition Corp.*,[1] Opposition No. 106,540, slip op. at 9 (TTAB Sept. 27, 1999). Packard Press appealed to this court, arguing that the Board incorrectly dissected the marks and applied an incorrect legal test to analyze the relatedness of the goods and services for the marks.

On appeal, this court held that the Board erred in analyzing the similarity or dissimilarity of the marks by focusing only on the "Packard" component of the marks, without considering both marks in their entireties. *Packard Press, Inc. v. Hewlett–Packard Co.*, 227 F.3d 1352, 1357, 56 USPQ2d 1351, 1353 (Fed.Cir.2000). This court further held that the record did not disclose whether the Board applied the correct legal test to analyze the relatedness of the goods and services for the marks. *Id.* at 1358. This court vacated and remanded the case to the Board to analyze the similarity of the marks in their entireties and to articulate its findings and conclusions about the relatedness of the goods and services for the marks. *Id.* at 1357–58.

On remand, the Board dismissed HP's opposition. The Board discerned no likelihood of confusion between the PACKARD TECHNOLOGIES mark and HP's HEWLETT PACKARD marks. *Hewlett Packard Co. v. Packard Press, Inc.*, Opposition No. 106,540, slip op. at 6 (TTAB Dec. 29, 2000). Specifically, the Board found that the marks create similar commercial impressions in their entireties. Furthermore, the Board noted that disclaimer of the term TECHNOLOGIES enhanced the similarity in view of HP's extensive involvement in the technology field. None-

---

1. After the Board's first opinion in this case, Packquisition Corporation changed its name of record to Packard Press, Inc.

theless, the Board concluded that the goods and services were not related enough to cause confusion. *Id.* at 3–5. In so concluding, the Board opined that HP only presented copies of its HEWLETT PACKARD registrations without offering additional evidence about the relationship between the goods and services of the marks. *Id.* at 4–5. Although acknowledging that the parties' goods and services "appear to be at least tangentially related," the Board declined to rely on the descriptions of the goods and services in HP's registrations and Packard Press's application to support a finding of likelihood of confusion. *Id.* at 5. The Board dismissed HP's opposition because HP "failed to establish that the goods and services involved herein are related in the mind of the consuming public as to their source or origin." *Id.* at 6. HP timely appealed to this court. The appellee elected not to file an opposing brief. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4).

## II.

█ This court reviews the Board's conclusions on questions of law without deference. *Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir.2000). In accordance with the standards of review set forth in the Administrative Procedure Act (APA), this court reviews the Board's factual findings for substantial evidence. *Id.* (citing *Dickinson v. Zurko,* 527 U.S. 150, 165, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930, 1937 (1999)); *In re Gartside,* 203 F.3d 1305, 1315, 53 USPQ2d 1769, 1775 (Fed.Cir.2000). The substantial evidence standard requires that this court ask whether a reasonable person might accept that the evidentiary record adequately supports the Board's conclusion. *On–Line Careline, Inc. v. America Online, Inc.,* 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1475 (Fed.Cir.2000) (citing *Consolidated Edison*

*Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

█ The PTO may refuse to register a trademark that so resembles a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d) (2000). "Whether a likelihood of confusion exists is a question of law, based on underlying factual determinations." *Recot,* 214 F.3d at 1326.

█ The Board and this court determine likelihood of confusion based on the factors set forth in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973). *Recot,* 214 F.3d at 1326. The likelihood of confusion analysis considers all *DuPont* factors for which there is evidence of record but "may focus ... on dispositive factors, such as similarity of the marks and relatedness of the goods." *Han Beauty, Inc. v. Alberto–Culver Co.,* 236 F.3d 1333, 1336, 57 USPQ2d 1557, 1559 (Fed.Cir.2001) (citing *In re Dixie Restaurants, Inc.,* 105 F.3d 1405, 1406–07, 41 USPQ2d 1531, 1533 (Fed.Cir.1997)). This court resolves doubts about the likelihood of confusion against the newcomer because the newcomer has the opportunity and obligation to avoid confusion with existing marks. *In re Shell Oil Co.,* 992 F.2d 1204, 1209, 26 USPQ2d 1687, 1691 (Fed.Cir.1993).

### A.

█ Turning to the *DuPont* factors, the "similarity or dissimilarity of the marks in their entireties" is a predominant inquiry. *DuPont,* 476 F.2d at 1361. This factor examines the relevant features of the marks, including appearance, sound, connotation, and commercial impression. *Recot,* 214 F.3d at 1329. For rational rea-

sons, the comparison may give more or less weight to a particular feature of the marks. *In re National Data Corp.,* 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir.1985) ("That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark ...."); *see also Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1570, 218 USPQ 390, 395 (Fed.Cir.1983) (permissible to give greater force and effect to a dominant feature of a mark).

■ As the Board noted on remand, the PACKARD TECHNOLOGIES and the HEWLETT PACKARD marks have some differences in appearance and sound. Each mark uses "Packard" in a slightly different context. HP's marks use "Packard" as the second component of a hyphenated name or as the second word in a mark consisting of two separate words. Packard Press uses "Packard" as the first word in a mark consisting of two separate words. Moreover, while the word "Hewlett" is the first word in each of HP's HEWLETT PACKARD marks, Packard Press does not even use the word "Hewlett" in the disputed PACKARD TECHNOLOGIES mark. Likewise, the marks sound different when pronounced.

Despite these differences, however, the record offers substantial evidence that the marks convey a similar commercial impression. The disclaimed word "Technologies" is highly suggestive or descriptive of the data processing and data transmission services in Packard Press's application. According to Packard Press Vice President Mr. Disque, his company chose the mark PACKARD TECHNOLOGIES to distinguish its new CD ROM and Internet services from its more traditional paper printing services. Thus, Packard Press selected the word "Technologies" to describe or suggest the technological nature of its new services. Given the descriptive nature of the disclaimed word "Technologies," the Board correctly found that the word "Packard" is the dominant and distinguishing element of PACKARD TECHNOLOGIES. *See Dixie Restaurants,* 105 F.3d at 1407 (holding that DELTA is the dominant portion of the mark THE DELTA CAFÉ where the disclaimed word CAFÉ is descriptive of applicant's restaurant services); *see also Giant Food,* 710 F.2d at 1570 (giving greater force and effect to the word GIANT as the dominant portion of the mark GIANT HAMBURGERS). Thus, as the Board correctly noted, the dominant portion of Packard Press's mark is identical to a prominent portion of HP's HEWLETT PACKARD marks.

Moreover, in the present case, the inclusion of "Technologies" serves to increase, rather than decrease, the similarity in overall commercial impression. HP's HEWLETT PACKARD registrations specify numerous computer and computer-related goods and services. Indeed, HP is heavily involved in the technology field. Thus, consumers familiar with the HEWLETT PACKARD marks and HP's technology-based goods and services would likely associate the PACKARD TECHNOLOGIES mark in some way with HP. Thus, even though Packard Press's PACKARD TECHNOLOGIES mark does not incorporate every feature of the HEWLETT PACKARD marks, the marks create a similar overall commercial impression.

Given the dominance of the word "Packard" in PACKARD TECHNOLOGIES and HP's heavy involvement in the technology field, this court agrees with the Board that the similarities in the marks outweigh the differences. Substantial evi-

dence supports the Board's finding that the marks are similar in their entireties.

## B.

■ Another *DuPont* factor relevant to the present case is the "similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use." *DuPont*, 476 F.2d at 1361. This "relatedness of the goods" factor compares the goods and services in the applicant's application with the goods and services in the opposer's registration. *CBS, Inc. v. Morrow*, 708 F.2d 1579, 1581, 218 USPQ 198, 199 (Fed.Cir.1983). Even if the goods and services in question are not identical, the consuming public may perceive them as related enough to cause confusion about the source or origin of the goods and services. *Recot*, 214 F.3d at 1329.

■ Because HP did not present evidence of relatedness beyond the descriptions in the application and registration, the Board refused to find the goods and services sufficiently related. While additional evidence, such as whether a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis, the Board did not consider the important evidence already before it, namely the ITU application and HP's registrations. Because it must consider each *DuPont* factor for which it has evidence of record, *Han Beauty*, 236 F.3d at 1336, the Board erred when it declined to compare the services described in Packard Press's application with the goods and services described in HP's registrations.

The language of the Board's opinion faulting HP for failure to supply more evidence of relatedness could be read to require proof of actual confusion. This court has previously noted that actual confusion is not necessary to show a likelihood of confusion. *See Giant Food*, 710 F.2d at 1571. A case involving an ITU application, where the disputed mark has not yet appeared in the marketplace, makes this point even more pertinent.

In its ITU application, Packard Press seeks to register PACKARD TECHNOLOGIES for "data and information processing." Packard Press also seeks to register PACKARD TECHNOLOGIES for "electronic transmission of data and documents via computer terminals; electronic transmission of messages and data." Finally, Packard Press seeks to register PACKARD TECHNOLOGIES for "data and digital information (media duplication of); conversion from one media form to another media (document data transfer and physical)."

HP owns the HEWLETT PACKARD mark for "consultation services in the field of computer, electronic, signalling [sic], measuring, data processing, analytical, and medical products." HP also owns the HEWLETT PACKARD mark for rental and leasing services for data processing equipment and for retail mail and telephone order services for data processing products. Additional HP registrations cover data processing and data storage systems and accessories, newsletters and other publications regarding electronic data processing products, systems instruments and apparatus used for data acquisition and processing, computers and data processing systems, data acquisition and handling systems, computers, computer software, facsimile machines, printers and printer parts, data processing and data storage systems and related parts, and maintenance, installation and repair of electronic data processing equipment. HP further owns the HEWLETT PACKARD mark for programs for use in information manipulation and apparatus for data acquisition and processing.

In this case, several of HP's registrations cover goods and services that are closely related to the broadly described services that Packard Press seeks to register under the PACKARD TECHNOLOGIES mark. The "data and information processing" description in the ITU application is very similar to HP's registrations covering consulting services, whether for data processing or for data processing products. The "electronic transmission of data and documents via computer terminals" description in the ITU application is very similar to HP's registrations covering facsimile machines, computers, and computer software. The "conversion from one media form to another media" description in the ITU application is similar to HP's registrations covering programs for information manipulation and apparatus for data acquisition and processing.

Based on the evidence of record, consumers may well find the goods and services of the parties related enough to make confusion likely. Substantial evidence does not support the Board's finding that the goods and services are not sufficiently related to maintain a finding of likelihood of confusion.

### C.

On appeal, HP asserts that the Board did not weigh two additional *DuPont* factors, namely the channels of trade and the class of purchasers factors. As this court has previously stated, absent restrictions in the application and registration, goods and services are presumed to travel in the same channels of trade to the same class of purchasers. *CBS*, 708 F.2d at 1581. Moreover, on the first appeal this court sustained the Board's original approach to these two *DuPont* factors. Without restrictions in the ITU application or in HP's registrations, these factors also favor a finding of likelihood of confusion.

### CONCLUSION

There is substantial evidence in the record that the PACKARD TECHNOLOGIES mark is sufficiently similar to HP's HEWLETT PACKARD marks, when applied to the parties' goods and services, that purchasers familiar with HP's goods and services would, upon encountering the PACKARD TECHNOLOGIES mark, likely believe that the services offered under the PACKARD TECHNOLOGIES mark were associated with or sponsored by HP. As a matter of law, there is a likelihood of confusion between the marks, and this court, therefore, reverses.

### COSTS

Each party shall bear its own costs.

*REVERSED.*