THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
June 9, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Iolo Technologies, LLC
_____

Serial No. 77399654
_____

Doyle B. Johnson of Reed Smith LLP, for Iolo Technologies, LLC.

Karen P Severson, Trademark Examining Attorney, Law Office 117 (Brett Golden, Managing Attorney).

_____

Before Holtzman, Cataldo, and Ritchie, Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Iolo Technologies, LLC ("applicant") filed an application to register the mark ACTIVECARE, in standard character form, for goods identified as "software, namely, a software feature that automatically analyzes and repairs or optimizes performance settings for personal computers, sold as a component of personal computer performance and maintenance utility software,"[1] The Trademark Examining Attorney refused registration of applicant's mark under Section 2(d) of the Trademark Act of 1946, 15 U.S.C.

_____

[1] Serial No. 77399654, in International Class 9, filed February 18, 2008, pursuant to Section 1(a) of the Trademark Act, 15 U.S.C.

§1052(d), on the ground that applicant's mark so resembles the registered mark ACTIVE CARE, in typed drawing form, for *inter alia* "technical support services namely, troubleshooting of electronic communications computer hardware and software problems by telephone, by e-mail, by fax and on-site; installation, maintenance and updating of electronic communications computer software,"[2] that when used on or in connection with applicant's identified goods, it is likely to cause confusion or mistake or to deceive.

Upon final refusal of registration, applicant filed a timely appeal. Both applicant and the examining attorney filed briefs. For the reasons discussed herein, the Board affirms the refusal to register.

We base our determination under Section 2(d) on an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); s*ee also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between

---

§1051(a), claiming dates of first use and first use in commerce of December 4, 2006.

[2] Registration No. 2473985, in International Class 42, issued July 31, 2001, and disclaiming the exclusive right to use "CARE" apart from the mark as shown. Sections 8 and 15 affidavits accepted and acknowledged. The registration also covers services in Class 41 not serving as a basis for the refusal of registration.

the marks and the similarities between the goods and/or services. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks"). We discuss each of the *du Pont* factors as to which applicant or the examining attorney submitted argument or evidence. To the extent that any other *du Pont* factors may be applicable, we treat them as neutral.

<u>The Marks</u>

We consider and compare the appearance, sound, connotation and commercial impression of the marks in their entireties. *In re E. I. du Pont De Nemours & Co.,* 177 USPQ at 567. The mark in the cited registration consists entirely of the words "ACTIVE CARE," which is also the only wording in applicant's mark. The only difference is that applicant's mark is a single compound word, while registrant's mark is two words. We find this difference to have no trademark significance. The two words retain the same meanings when joined as a compound. *See for example In re Carlson*, 91 USPQ2d 1198, 1200 (TTAB 2009) (URBANHOUZING found to have same meaning as URBAN HOUSING); *Cf. In re Gould Paper Corp.,* 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) (SCREENWIPE generic for a wipe for cleaning television and computer screens), and *In re Planalytics, Inc.,* 70 USPQ2d 1453

3

(TTAB 2004) (GASBUYER merely descriptive of risk-management services related to natural gas). Further, as we have often stated, the question is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in their entireties that confusion as to the source of the goods or services offered under the respective marks is likely to result. In addition, that the registrant has disclaimed the term "CARE" in its mark does not change the analysis, because even disclaimed words must be considered when comparing marks for likelihood of confusion. *See In re Shell Oil Co*., 992 F.2d 1204, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993) *citing In re National Data Corp*., 753 F.2d 1056, 224 USPQ 749, 750-51 (Fed. Cir. 1985) ("The technicality of a disclaimer ... has no legal effect on the issue of likelihood of confusion.").

Thus, the marks are substantially identical. Applicant does not contest this. Accordingly, we find that the first *du Pont* factor weighs strongly in favor of finding a likelihood of confusion.

### The Goods and Services and Channels of Trade

In determining the similarity or dissimilarity of the goods, we note that the more similar the marks at issue, the less similar the goods or services need to be for the Board to find a likelihood of confusion. *In re Shell Oil Co.*, 26 USPQ2d

4

at 1688-1689 (Fed. Cir. 1993); *In re Opus One Inc.*, 60 USPQ2d 1812 (TTAB 2001).  When the marks are substantially identical, as they are here, it is only necessary that there be a viable relationship between the goods or services to support a finding of likelihood of confusion.  *In re Concordia Int'l Forwarding Corp.*, 222 USPQ 355, 356 (TTAB 1983).  In any event, the goods and/or services need not be identical or even competitive in order to support a finding of likelihood of confusion.  Rather, it is enough that the goods and/or services are related in some manner or that some circumstances surrounding their marketing are such that they would be likely to be seen by the same persons under circumstances which could give rise, because of the marks used or intended to be used therewith, to a mistaken belief that they originate from or are in some way associated with the same producer or that there is an association between the producers of each of the parties' goods and/or services.  *In re Melville Corp.*, 18 USPQ2d 1386 (TTAB 1991).

Applicant's identified goods are "software, namely, a software feature that automatically analyzes and repairs or optimizes performance settings for personal computers, sold as a component of personal computer performance and maintenance utility software."  We read this to include a software feature that analyzes and repairs or optimizes all possible performance settings related to personal computers, including communications

5

settings.  The cited registration covers "technical support

services namely, troubleshooting of electronic communications

computer hardware and software problems by telephone, by e-mail,

by fax and on-site; installation, maintenance and updating of

electronic communications computer software."[3]  We read this to

include troubleshooting of communications software for all types

of computers, including personal computers.

Applicant cites several cases for the proposition that

there is no *per se* rule that computer-related goods and services

are related.  *See Toro Co. v. ToroHead, Inc.*, 61 USPQ2d 1164

(TTAB 2001); *In re Quadram Corp.,* 228 USPQ 863 (TTAB 1985); and

*Hasbro Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 52 USPQ2d

---

[3] To the extent that applicant attempted to "clarify" registrant's identification by submitting the specimen from the latter's registration file with applicant's appeal brief, we have not considered this submission.  First, we find it necessary to sustain the examining attorney's objection to the evidence as having been untimely submitted.  *See* 37 CFR § 2.142(d).  Furthermore, even if we were to consider the evidence, it would not change our decision, since we do not find anything of probative value therein regarding the description of registrant's services.  Although applicant suggests that the cited registration covers technical support of only "electronic communications equipment," we read the identification's reference to "electronic communications computer hardware and software" to include technical support of equipment and programs and to encompass all communications that are electronic, i.e., by Internet, e-mail, etc., which includes most computer functions.  The specimen does not indicate anything to the contrary.  Further, it is well-settled that we must base our likelihood of confusion determination on the goods or services as identified in the involved application and cited registration.  *Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990).  Nor do we find the recitation of services in the cited registration to be so vague as to require clarification.  *Cf. In re Trackmobile Inc.*, 15 USPQ2d 1152, 1154 (TTAB 1990).

1402 (D. Mass. 1999). We fully agree. Rather, we must analyze the situation at hand. In a similar case, in the absence of much evidence of record, our primary reviewing court, the Court of Appeals for the Federal Circuit, directed the Board to simply "compare the services described in [applicant's] application with the goods and services described in [opposer's] registrations." *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002) (finding likelihood of confusion "as a matter of law" based on a comparison of the parties' identifications, although they involved different goods and services within the fields of technology); *see also Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed." (citations omitted)).

Here, based on the identifications themselves, we find that applicant offers a product that is complementary in function and purpose to the software installation, maintenance and updating services offered by registrant. Specifically, an optimizing

software feature would be among the software tools that a computer technician might use when installing, maintaining or updating electronic communications computer software. *See Id.* (applicant's OCTOCOM for modems is likely to cause confusion with opposer's OCTACOMM for computer programs because the products are used in conjunction with each other).

The evidence submitted by the examining attorney tends to support the conclusion that applicant's goods and registrant's services are likely to be perceived by consumers as deriving from the same source. Specifically, the examining attorney has submitted copies of use-based, third-party registrations covering goods and services of the type in both the application and the cited registration. For example, Registration No. 3292522 identifies "computer software for . . . optimizing the physical layout of computer networking hardware. . . " in Class 9 (as identified in the application) and "technical support services" in Class 42 (as identified in the cited registration); and Registration No. 3367407 identifies "computer software for use in . . . optimizing the characteristics of computer drives and multiple software applications . . ." in Class 9 (as identified in the application) and "technical support services" in Class 42 (as identified in the cited registration). The examining attorney also submitted evidence from several websites to show that various types of optimization software such as

identified by applicant and technical support services such as identified by the cited registration are advertised to consumers under the same mark. These websites include www.finallyfast.com, www.asmwsoft.com, www.passmark.com, www.pcpitstop.com, and www.intel.com. We note that these third-party identifiers are not necessarily specific about the nature of their "technical support" services nor their "optimization" software. However, they tend to support the relatedness shown by the parties' identifications. This weighs in favor of finding a likelihood of confusion. *See also* McCarthy on Trademarks § 24:44 (4th ed. 2009) ("[I]f the targeted markets for the computer products overlap, it is more likely that confusion will result.")

Regarding the channels of trade, there is nothing that prevents registrant's technical support services for troubleshooting of computer hardware and software problems from being promoted in the same channels of trade for, and to the same classes of consumers that purchase, applicant's performance optimization software. Furthermore, since computer owners are the likely purchasers of both registrant's services and applicant's products, the target consumers of both registrant and applicant are the same. Thus, and as discussed above, while it is only necessary to find a viable relation between applicant's goods and registrant's services to support a finding

of likelihood of confusion, due to the essentially identical nature of the marks, in this case the identifications thereof as well as the evidence of record supports a finding that these goods and services are complementary in nature.

Accordingly, we find that these *du Pont* factors weigh in favor of finding a likelihood of consumer confusion.

### Consumer Sophistication

Applicant urges us to consider consumer sophistication as a factor. However, applicant has submitted no evidence that either its consumers or those of registrant would be sophisticated. Furthermore, as our precedent dictates, even sophisticated buyers are not immune from source confusion where, as here, the marks are substantially identical. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 948-949 (Fed. Cir. 2000).

### Balancing the Factors

In view of our findings that the marks are substantially identical, the goods and services are related, and the goods and services move in the same or similar channels of trade, we find that applicant's ACTIVECARE mark for "software, namely, a software feature that automatically analyzes and repairs or optimizes performance settings for personal computers, sold as a component of personal computer performance and maintenance utility software" is likely to cause confusion with the registered mark ACTIVE CARE for, *inter alia,* "technical support

Serial No. 77399654

services namely, troubleshooting of electronic communications computer hardware and software problems by telephone, by e-mail, by fax and on-site; installation, maintenance and updating of electronic communications computer software."

Decision: The refusal to register is affirmed.

11