This Opinion is a
Precedent of the TTAB

Mailed: October 25, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Berkeley Lights, Inc.*

————

Serial No. 88895703

————

Nikolaus A. Woloszczuk of KXT Law, LLP for Berkeley Lights, Inc.

Caitlin C. Watts-FitzGerald, Trademark Examining Attorney, Law Office 111,
   Chris Doninger, Managing Attorney.

————

Before Zervas, Larkin, and Dunn,
   Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

**On Request for Reconsideration**

On January 26, 2022, the Board panel issued a final decision affirming the Examining Attorney's refusal to register Applicant's proposed standard-character mark DEEP OPTO PROFILING on the Principal Register for various chemicals in Class 1 and various biochemical assay and scientific protocol services in Class 42 on the ground that the mark is "merely descriptive" of those goods and services within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). We found, "[o]n the basis of the uses of DEEP, OPTO, and PROFILING separately and together

in Applicant's materials," including in Applicant's 2020 filing with the United States Securities and Exchange Commission (the "SEC Filing") and on Applicant's website, that there was:

> no doubt that consumers of Applicant's goods and services for testing cells on a microfluidic chip would immediately understand that DEEP OPTO PROFILING describes a key function and purpose of Applicant's chemicals and assays, namely, a self-described "process" involving the use of optofluidic technology that depends on microfluidics, which Applicant's materials state enables the "deep profiling" of "the relevant phenotypic characterization, at single-cell resolution over time and connecting this to the genotypic information for each cell," and enables consumers to "[m]easure individual cells over time and over many assays, stack their performances against each other and only export the cells of interest."

18 TTABVUE 30-31.

Applicant timely requested reconsideration of the Board's decision. 19 TTABVUE. "Generally, the premise underlying a request for reconsideration . . . is that, based on the evidence of record and the prevailing authorities, the Board erred in reaching the decision it issued," and a request for reconsideration "normally should be limited to a demonstration that based on the evidence properly of record and the applicable law, the Board's ruling is in error and requires appropriate change." TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) Section 543 (June 2022) (cited in TBMP § 1219.01).

Here, however, Applicant does not argue that the evidence of record fails to support the Board's finding of mere descriptiveness, that the Board misapplied the law, or that the Board ignored evidence supporting Applicant's right to register its proposed mark. Instead, Applicant's complaint is that:

> The prosecution history and appeal briefing before the Board conclusively established that the Examining Attorney had not met her *prima facie* burden to prove that the Mark is descriptive. However, rather than ordering reversal of the refusal to register and approving the Mark for publication, the Board sought to buttress the Examining Attorney's unsupported conclusions by making entirely *new* arguments. The Board's affirmance was in error for two reasons. First, by ignoring the Examining Attorney's failure to meet her burden, and instead relying on new arguments that Applicant never had the opportunity to respond to, the Board violated Applicant's Constitutional procedural due process rights as well as the requirements of the Administrative Procedure Act ["APA"], specifically, the right to have notice of the matters of fact and law asserted against registration of the Mark. Second, the Board's reliance on new arguments demonstrates that the Board failed to follow its own precedent that doubts about registration must be resolved in an applicant's favor. Both independent reasons demonstrate that the refusal to register should be reversed and that the Mark should be approved for publication.

19 TTABVUE 6-7 (emphasis supplied by Applicant).[1]

Applicant also mounts a broadside attack on the Board's authority to affirm **any** refusal to register based on a rationale different from the one adopted by the examining attorney. Applicant rejects the principles discussed in TBMP Section 1217 and in the cases cited therein that "[i]n determining an ex parte appeal, the Board reviews the appealed decision of the examining attorney to determine if it was

---

[1] Applicant requests that the Board "reverse its Decision and approve the Mark for publication" or "vacate its Decision and remand for further examination." 19 TTABVUE 17. The Board has no authority to vacate its decision and remand the application for further examination because "after rendering a final decision, [the] Board is without power to entertain any request for additional prosecution except as provided in 37 C.F.R. § 2.142(g)." *In re Info. Builders Inc.*, 2021 USPQ2d 228, at *3 (TTAB 2021) (citing *In re Johanna Farms, Inc.*, 223 USPQ 459, 460 (TTAB 1984)). That rule permits the entry of a disclaimer following an unsuccessful appeal of a disclaimer requirement.

correctly made" and "need not find that the examining attorney's rationale was correct in order to affirm the refusal to register, but may rely on a different rationale."[2] According to Applicant, "an examination of the underlying support cited for this 'alternative rationale' principle demonstrates that the Board's position is not supported by any competent authority and that it directly contradicts fundamental notions of procedural due process as well as the notice requirements of the APA." 19 TTABVUE 13. Applicant argues that none of the cases cited in TBMP Section 1217 "provide adequate legal authority to support the stated conclusion," 19 TTABVUE 13, and that "the Board's own rules imply that new issues and arguments should be addressed through a remand for further examination." *Id.* at 15 (citing Trademark Rule 2.142(f)(1), 37 C.F.R. § 2.142(f)(1)). Applicant concludes that "the Board is not free to affirm the Examining Attorney based on alternative rationales expressed in new arguments." *Id.*

Finally, Applicant argues that "[i]t is well established that the Board has a policy of resolving doubts in the applicant's favor in ex parte cases." *Id.*[3] Applicant argues that the "Board's reliance on new arguments was a recognition that the Examining

---

[2] Applicant mistakenly refers to the TBMP as the "TMEP" (the initialism for the TRADEMARK MANUAL OF EXAMINING PROCEDURE) throughout its argument. 19 TTABVUE 13-15. Applicant's citations, however, make it clear that Applicant's focus is on the Board's Manual.

[3] There is no such general "policy of resolving doubts in the applicant's favor in ex parte cases." 19 TTABVUE 15. As the Board noted in its decision, "[t]he Board resolves doubts as to the mere descriptiveness of a mark in favor of the applicant," 18 TTABVUE 11 (quoting *In re Fallon*, 2020 USPQ2d 11249, at *8 (TTAB 2020)), but the "rule of doubt" works against the applicant in Section 2(d) cases. *See, e.g., Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1008 (Fed. Cir. 2002) ("This court resolves doubts about the likelihood of confusion against the newcomer because the newcomer has the opportunity and obligation to avoid confusion with existing marks.").

Attorney failed to meet her prima facie burden to prove that the Mark is descriptive," and that "Applicant's arguments overcoming the Examining Attorney's refusal to register demonstrated that while there was perhaps some doubt about registration, that doubt should be resolved in the Applicant's favor." *Id.*

## I. There Are No Substantive Errors in the Board's Decision

Applicant's request for reconsideration afforded it the opportunity to show that the Board's decision erroneously applied the law of descriptiveness to the factual record, including Applicant's own materials.[4] As discussed below, however, Applicant makes no such arguments.

Applicant first argues that the Board improperly relied on Applicant's SEC Filing and website "to show that Applicant itself had previously used the phrase 'deep profiling,'" and that "[b]ased on its finding that 'deep profiling' was part of the Mark, the Board concluded that the term is descriptive." *Id.* at 9.[5] Applicant argues that

---

[4] Applicant incorrectly claims that "it cannot be argued that Applicant had an opportunity to respond to the Board's new arguments through this request for reconsideration, as the Board's own rules prohibit the Applicant from introducing new evidence and argument." 19 TTABVUE 12-13 (citing TBMP § 543). In this request for reconsideration, Applicant could have responded on the merits to the "new arguments" that it claims were made by the Board; indeed, Section 543 contemplates such a response given that a request for reconsideration should not "be devoted simply to a reargument of the points presented in the requesting party's brief on the case." TBMP § 543. With respect to new evidence, Section 1218 of the TBMP explains that an application may be reopened after a final decision on appeal through a petition to the Director upon "a showing of sufficient cause for consideration of any matter not already adjudicated" under Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g). Applicant did not avail itself of this possible remedy.

[5] The Board noted the use of "deep profiling" on Applicant's website, 18 TTABVUE 20-21, but also relied on the use of the words "deep," "deeper," and "deepest" in the SEC Filing and on Applicant's website as evidence of the meaning of the word DEEP in Applicant's proposed mark. *Id.* at 19-21. The Board's conclusion that Applicant's proposed mark is merely descriptive was, of course, based on more than just evidence of the meaning of the word DEEP.

"[n]ever during prosecution or in appeal briefing had the Examining Attorney ever argued that Applicant's own use of the phrase 'deep profiling' in any way demonstrated that it was part of the Mark and therefore descriptive," and that "[a]s a result, Applicant never received notice of this argument or an opportunity to respond to it." *Id.*[6]

In its appeal brief, Applicant argued that the Examining Attorney found "deep profiling" to be part of the mark, and that "the Examining Attorney provide[d] neither evidence nor argument persuading that a consumer viewing the Mark as a whole would distill 'deep profiling' out of it." 12 TTABVUE 14. Applicant also argued that "the Examining Attorney failed to provide evidence or argument that the phrase 'deep profiling' is a descriptive phrase of *art with respect to the applied-for goods and services . . . .*" *Id.* (emphasis supplied by Applicant). Applicant concluded that the evidence cited by the Examining Attorney did not "support the Examining Attorney's conclusion that 'deep profiling' is a 'phrase of art in fields of scientific research, *particularly with reagents . . . .*" *Id.* at 15 (emphasis supplied by Applicant).

Contrary to Applicant's argument, neither we nor the Examining Attorney found that the phrase "deep profiling" was "part of" the proposed mark. 19 TTABVUE 9. Instead, we pointed to Applicant's own use of the term "deep profiling" on its website as record evidence undercutting its claim that a consumer would not know what the

---

[6] The Examining Attorney cited portions of the SEC Filing in which Applicant used the words "deep" and "deepest" in support of her argument regarding the meaning of the word DEEP in Applicant's proposed mark. 14 TTABVUE 5-6 (citing July 24, 2020 Office Action at TSDR 22-25 (attaching printout of SEC Filing)).

word DEEP in Applicant's proposed mark modified, 18 TTABVUE 20-21 n.42, and we concluded that "a consumer viewing Applicant's website's use of 'Deep Profiling' would immediately understand that DEEP (like OPTO) modifies PROFILING." *Id.* (citing *In re Virtual Indep. Paralegals, LLC*, 2019 USPQ2d 111512, at *3-8 (TTAB 2019) (considering evidence of use of the terms "Virtual Paralegals" and "Independent Paralegal" in determining that the proposed mark VIRTUAL INDEPENDENT PARALEGALS was generic for paralegal services)). Applicant makes no effort to show that our analysis of the descriptiveness of the individual words DEEP and PROFILING in Applicant's proposed mark was wrong based on the record evidence, including the SEC Filing and Applicant's own website.

Applicant next argues that the Board disregarded the Examining Attorney's original and new arguments regarding the meaning of the word OPTO in Applicant's proposed mark. Applicant argues that the Examining Attorney incorrectly "offered an entirely new, contradictory, and unsupported definition of 'opto,' arguing that it refers to 'graphical representations,'" and that the Examining Attorney "argued that consumers encountering the Mark would understand it to include or refer to the term 'optical profiling.'" 19 TTABVUE 9 (citing 14 TTABVUE 5, 12-14). Applicant also argues that the Examining Attorney's failure to respond to Applicant's argument that its goods and services do not involve "optical profiling" in the sense claimed by the Examining Attorney was "an admission that the Applicant was correct and that the applied-for goods and services do *not* perform 'optical profiling' as the phrase is used in the cited articles," and that the Board "also implicitly acknowledged that the

Examining Attorney's argument was faulty." *Id.* at 10 (emphasis supplied by Applicant).

Applicant further argues that "[w]ith the arguments and evidence before it, the Board should have found that the Examining Attorney failed to carry her prima facie burden to show that 'opto' is descriptive," and that "[i]nstead, the Board asserted new arguments that the Examining Attorney **never** made." *Id.* (bolding substituted for original italics). Applicant concludes that "[n]ever during prosecution or in appeal briefing had the Examining Attorney ever argued that Applicant's own use of the terms 'opto,' 'opto-fluidic,' or 'OptoSelect' in any way demonstrated that consumers encountering 'opto' would immediately understand it to be descriptive and indicative of optofluidic," and that "[a]s a result, Applicant never received notice of this argument or an opportunity to respond to it." *Id.*

Applicant can hardly claim that it was blindsided by the Board's analysis of the meaning of the word OPTO in its proposed mark when both it and the Examining Attorney acknowledged during prosecution and on appeal that OPTO referred to Applicant's optofluidic systems, and might be considered descriptive for that reason. In its request for reconsideration of the final refusal to register, Applicant argued that **"[t[he 'opto' element in the applied-for goods and services is indicative – in a suggestive manner – of the use of Applicant's optofluidic systems**, which notably use light to activate phototransistors within a microfluidic chip, which in turn generates a dielectrophoretic force that is used to selectively move, sort,

and/or export cells within/from that chip."[7] Applicant made of record and cited its website in support of this argument.[8] Once again citing its website, Applicant made exactly the same argument in its appeal brief, 12 TTABVUE 16, and a similar argument its reply brief. 15 TTABVUE 6.

The Examining Attorney similarly noted during prosecution that "OPTO is defined as 'optic' or 'vision,' and is utilized scientifically to indicate when a procedure or process requires an optical scan or assay in order to perform the service," that "Applicant's assays and protocols are optic or OPTO in nature," and that Applicant "describes the platform that performs this service as being an **opto**fluidic platform."[9] The Examining Attorney made the same point on appeal. 14 TTABVUE 6.

As explained below, the United States Patent and Trademark Office ("USPTO") commonly looks to an applicant's website when it is made of record for possible evidence of descriptive use of a proposed mark. We did so here when considering Applicant's arguments that relied on its website, and stating that the evidence instead supported a finding that the OPTO element of its proposed mark was descriptive: "Applicant's website makes it clear that when OPTO is used in

---

[7] May 18, 2021 Request for Reconsideration at TSDR 10 (emphasis added).

[8] *Id.* at TSDR 14-17.

[9] November 24, 2020 Final Office Action at TSDR 1 (emphasis supplied by the Examining Attorney). In denying Applicant's request for reconsideration of the final refusal to register, the Examining Attorney made of record a June 3, 2016 article from the LexisNexis database discussing Applicant's "Beacon optofluidics platform" and "Beacon optofluidics chip" that stated that "[f]or the first time, individual cells can be isolated, cultured, and assayed on a single opto-fluidic chip supporting a multitude of applications," June 14, 2021 Denial of Request for Reconsideration at TSDR 58, as well as a Wikipedia entry captioned "Optofluidics." *Id.* at TSDR 59-60.

Applicant's proposed mark, it is short for 'Optofluidic technology,'" and that "Applicant's own uses of OPTO on its website leave no doubt that consumers of the goods and services identified in the application would immediately understand that OPTO describes the optofluidic technology that is a feature of Applicant's assays, which take place on a microfluidic chip." 18 TTABVUE 23. We concluded that the "fact that Applicant's use of OPTO may not signal the use of the sort of optical profiling described in some of the scientific literature in the record does not mean that it is not descriptive when used as part of Applicant's proposed mark." *Id.* Applicant makes no effort to show that our analysis of the mere descriptiveness of the word OPTO was wrong based on the record evidence, including Applicant's own website, which Applicant twice acknowledged showed that OPTO was short for "optofluidic," or to show that the word OPTO was suggestive, not descriptive, as Applicant had previously argued during prosecution and on appeal.

Finally, Applicant argues that the Board relied on new arguments to find that the proposed mark DEEP OPTO PROFILING is merely descriptive in its entirety:

> [T]he Board argued that the Applicant's use of the Mark in its SEC Filing "to describe a process involving Applicant's goods and services make it clear that in combining the phrase DEEP PROFILING and the abbreviation OPTO into DEEP OPTO PROFILING, each of the individual words in Applicant's proposed mark retains its merely descriptive significance in relation to Applicant's goods and services." . . . The Examining Attorney never made the argument that Applicant's use of the Mark in its own materials demonstrated that the Mark is descriptive, as a result, Applicant never received notice or an opportunity to respond.

19 TTABVUE 11.

Applicant was put on notice in the first Office Action that its mark as a whole was being refused as merely descriptive and that statements in its SEC Filing were relevant to that determination.[10] The Examining Attorney even highlighted the word "deep" multiple times in the SEC Filing, including when it appeared in "Deep Opto Profiling."[11] We reviewed the SEC Filing when considering the arguments concerning the meaning of the component elements of the mark, and the mark as a whole, and found that "Applicant's SEC Filing uses the proposed mark as a whole in a manner that shows that the combination of the words DEEP, OPTO, and PROFILING 'results in a composite that is itself merely descriptive.'" 18 TTABVUE 26 (quoting *In re Omniome, Inc.*, 2020 USPQ2d 3222, at *10 (TTAB 2019)). Once again, Applicant makes no effort to show that our analysis of the mere descriptiveness of the mark as a whole was wrong based on the record evidence, including Applicant's own SEC Filing.

We reject Applicant's suggestion that it was unfair for the Board to consider descriptive use of the elements of the proposed mark, or the entire proposed mark, in Applicant's own materials. Decades ago, the Federal Circuit rejected a similar argument in an appeal involving the Board's use of an applicant's catalog to find that APPLE PIE was merely descriptive of potpourri, holding that "[w]e discern no error or inequity in the Board's use of appellant's catalog as evidence of what it contains, or in the Board's finding that 'apple pie' refers to the potpourri scent." *In re Gyulay,*

---

[10] July 24, 2020 Office Action at TSDR 1, 22-25.

[11] *Id.* at TSDR 22-23.

820 F.2d 1216, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987). Doing so is also consistent with the Federal Circuit's admonition that in descriptiveness cases in which there is record evidence of the applicant's use of the proposed mark, the Board "must consider [the] mark in its commercial context to determine the public's perception." *In re N.C. Lottery*, 866 F.3d 1363, 123 USPQ2d 1707, 1709 (Fed. Cir. 2017). We cannot ignore the reality that "'[p]roof of mere descriptiveness may originate from [an applicant's] own descriptive use of its proposed mark, or portions thereof' in its materials," 18 TTABVUE 26 (quoting *Omniome*, 2020 USPQ2d 3222, at \*10), and that "'an applicant's own website and marketing materials may be . . . 'the most damaging evidence' in indicating how the relevant purchasing public perceives a term.'" *Id.* (quoting *In re Mecca Grade Growers, LLC*, 125 USPQ2d 1950, 1958 (TTAB 2018) (quoting *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1112 (Fed. Cir. 1987)). These principles are aptly illustrated by Applicant's website and SEC Filing in this case.

Accordingly, we reject Applicant's categorical position that if the Examining Attorney did not cite Applicant's website, and cited the SEC Filing to show the descriptiveness of the word DEEP, we cannot review and rely on those materials to affirm the refusal to register. "The Board is, rather, bound to review all of the evidence of record and reach a determination concerning whether that evidence, taken as a whole, supports the refusal made by the Examining Attorney or supports the applicant's argument for allowance of the mark." *In re Avocet, Inc.*, 227 USPQ 566, 567 (TTAB 1985). That is precisely what we did in our decision.

## II.     There Are No Procedural Errors in the Board's Decision

Applicant contends that the Board violated the APA and Applicant's due process rights when the Board did not adopt the Examining Attorney's reasoning and view of the evidence in total,[12] and failed to follow decisions of the Federal Circuit reviewing patent cases. Applicant also takes issue with the Board's remark that it may rely on a "different rationale" from that of the Examining Attorney, arguing that TBMP Section 1217 and the cases cited therein are without legal basis. Finally, Applicant argues that the Board erred in not resolving doubt in Applicant's favor. 19 TTABVUE 7-16. We address each of these arguments in turn.

### A.     Applicant Received Due Process

Applicant argues that the Board's use of "new arguments" based on Applicant's own materials violated its rights under the Due Process Clause and the APA, and claims that "[i]n similar situations, the Federal Circuit has held that such Board actions are unlawful." 19 TTABVUE 11.[13] The "similar situations" to which Applicant points involve decisions of the Board of Patent Appeals and Interferences (the "Patent Board"), the predecessor to our current sister tribunal, the Patent Trial and Appeal

---

[12] As an adjudicative tribunal within the USPTO, a federal administrative agency, the Board is subject to the APA and the Due Process Clause of the Fifth Amendment to the United States Constitution.

[13] With respect to Applicant's arguments under the Due Process Clause, "[w]hile the Trademark Trial and Appeal Board is an administrative tribunal, not an Article III court, and is not empowered to strike down a statute as contrary to the Constitution," *In re ADCO Indus. — Techs., L.P.*, 2020 USPQ2d 53786, at *9 (TTAB 2020) (citing *In re DBC*, 545 F.3d 1373, 89 USPQ2d 1123, 1127-28 (Fed. Cir. 2008)), "'in addressing a constitutional challenge, an agency may properly address the statute that it administers.'" *In re Texas With Love, LLC*, 2020 USPQ2d 11290, at *7 n.8 (TTAB 2020) (quoting *ADCO Indus. – Techs.*, 2020 USPQ2d 53786, at *9).

Board, under the United States Patent Act and the Patent Rules of Practice. Each of the cases cited by Applicant for the proposition that the Board's decision violated Applicant's rights under the Due Process Clause and the APA—*In re Kumar*, 418 F.3d 1361, 76 USPQ2d 1048 (Fed. Cir. 2005); *In re Leithem*, 661 F.3d 1316, 100 USPQ2d 1155 (Fed. Cir. 2011); *In re Stepan Co.*, 660 F.3d 1341, 100 USPQ2d 1489 (Fed. Cir. 2011); and *In re Biedermann*, 733 F.3d 329, 108 USPQ2d 1623 (Fed. Cir. 2013)—found that the Patent Board had relied on a "new ground" for rejection of the involved claims that was not relied on by the examiner.

Unlike the Patent Board in the cited cases, we did not adopt a "new ground" for refusing to register Applicant's proposed mark when we affirmed the Examining Attorney's descriptiveness refusal. The statutory basis for refusal, mere descriptiveness under Section 2(e)(1) of the Trademark Act, did not change, nor did the "thrust of the rejection," *In re Jung*, 637 F.3d 1356, 98 USPQ2d 1174, 1180 (Fed. Cir. 2011), namely, that the record evidence showed that consumers of Applicant's goods and services would understand the individual elements of the proposed DEEP OPTO PROFILING mark and the mark as a whole to merely describe Applicant's goods and services.

As explained above, the Board may rely on evidence in the record of how an applicant uses the proposed mark in determining whether consumers would perceive it as merely descriptive, and there is no unfairness to the applicant when we do so. *See Gyulay*, 3 USPQ2d at 1010. Where, as here, the examining attorney finds that a proposed mark is merely descriptive based on evidence of record regarding the

significance of the mark's constituent terms in relation to the identified goods and services, but does not cite to all relevant evidence of record, there is no unfairness to an applicant when the Board highlights additional evidence in the record supporting consumer perception of the mark as merely descriptive. This is particularly so where that evidence reflects the applicant's own use of the terms comprising its proposed mark.

We do not view our scrutiny of the entire record, and our reliance on Applicant's own materials in affirming the refusal to register, as the functional equivalent of making a sua sponte calculation of mathematical values, as in *Kumar*, or interpreting or combining prior art references in a new manner, as in *Leithem*, *Biedermann*, and *Stepan*. Rather, our citation of Applicant's use of "Deep profiling" in its SEC Filing and on its website augmented the Examining Attorney's findings, based in part on the SEC Filing, regarding the significance of the word DEEP in Applicant's proposed mark. 14 TTABVUE 5-6. Our finding regarding the meaning of the word OPTO as referring to "optofluidic" echoed the Examining Attorney's discussion of that possible meaning and refuted Applicant's argument in its appeal brief that OPTO was "indicative – in a suggestive manner – of the use of Applicant's optofluidic systems." 12 TTABVUE 16. Our citation of Applicant's use of the entire mark in its SEC Filing to describe "a process we call 'Deep Opto Profiling'," 18 TTABVUE 24-25, augmented the Examining Attorney's ultimate conclusion that the mark, considered as a whole, is merely descriptive.

We disagree with Applicant that there was any lack of notice or due process here: the mere descriptiveness refusal has remained the same since the first Office Action. Throughout prosecution and on appeal, the mere descriptiveness refusal was based on the meaning of the individual terms and their continued descriptive significance when used in combination in connection with Applicant's goods and services. Applicant was provided with the evidence supporting the refusal as attachments to the Office Actions, and had the opportunity to address the Examining Attorney's evidence and to provide evidence of its own in response, and Applicant did so. *See In re Shinnecock Smoke Shop*, 571 F.3d 1171, 91 USPQ2d 1218, 1220 (Fed. Cir. 2009) ("There was no due process violation here because Applicant 'was provided a full opportunity to prosecute [its] application and to appeal the examining attorney's final rejection[ ] to the Board.'") (quoting *In re Int'l Flavors & Fragrances Inc.*, 183 F.3d 1361, 51 USPQ2d 1513, 1518 (Fed. Cir. 1999)). Although Applicant had the opportunity in this request for reconsideration to show why the evidence does not support our decision affirming the refusal, Applicant made no effort to do so.

Applicant also argues that "the Board's own rules imply that new issues and arguments should be addressed through a remand for further examination." 19 TTABVUE 15 (citing 37 C.F.R. § 2.142(f)(1)). Trademark Rule 2.142(f) provides that

> (1) If, during an appeal from a refusal of registration, it appears to the Trademark Trial and Appeal Board that **an issue not previously raised** may render the mark of the appellant unregistrable, the Board may suspend the appeal and remand the application to the examining attorney for further examination to be completed within the time set by the Board.

> (2) If the further examination does not result in **an additional ground for refusal of registration**, the examining attorney shall promptly return the application to the Board, for resumption of the appeal, with a written statement that further examination did not result in **an additional ground for refusal of registration**.

37 C.F.R. § 2.142(f) (emphasis added).

There is no reference in the text of Rule 2.142(f)(1) to what Applicant calls new "arguments," 19 TTABVUE 15, and when subsection (f)(1) of Rule 2.141 is read in connection with neighboring subsection (f)(2), it is clear that the phrase "an issue not previously raised" in Rule 2.142(f)(1) refers to a new ground for refusal, i.e., a different statutory or Trademark Rule-based bar to registration that was "not previously raised" as a ground for refusal to register. *See, e.g., Fallon*, 2020 USPQ2d 11249, at *1 (discussing remand of application following appeal of three refusals to register to allow the examining attorney to issue a new fourth ground for refusal based on mere descriptiveness); *In re Yarnell Ice Cream, LLC*, 2019 USPQ2d 265039, at *2 (TTAB 2019) (discussing remand of application following appeal of three refusals to register to allow the examining attorney to issue new refusals based on failure to function and the insufficiency of the applicant's showing of acquired distinctiveness); *In re Beds & Bars Ltd.*, 122 USPQ2d 1546, 1547 (TTAB 2017) (on appeal of surname refusal under Section 2(e)(4) of the Trademark Act, remand ordered under Rule 2.142(f) "to allow the Examining Attorney to consider whether registration also should have been refused, in the alternative, under Section 2(c) of the Trademark Act, 15 U.S.C. § 1052(c).").

In this case, we did not affirm the refusal to register Applicant's proposed mark on an "additional ground" or a "new ground." We cited no new or additional ground for refusal and no new evidence in our decision. Instead, we reviewed the Examining Attorney's and Applicant's arguments and the evidence of record to see if they supported the mere descriptiveness refusal, and concluded that they did for the reasons stated in our decision. The fact that we may have gone into more detail or cited additional portions of the same evidence of record for the same reasons as the Examining Attorney does not give rise to a new ground for refusal. *Cf. In re Adler*, 723 F.3d 1322, 107 USPQ2d 1526, 1530 (Fed. Cir. 2013); *Jung*, 98 USPQ2d at 1180. As discussed above, although Applicant had the opportunity in this request for reconsideration to show why our conclusion was wrong, Applicant made no effort to do so.

### B. Applicant's Challenges to the Principle Discussed in TBMP Section 1217

For ease of reference in following our analysis, we set forth below the relevant paragraph in TBMP Section 1217 that is the subject of Applicant's challenge:

> In determining an ex parte appeal, the Board reviews the appealed decision of the examining attorney to determine if it was correctly made. The Board need not find that the examining attorney's rationale was correct in order to affirm the refusal to register, but rather may rely on a different rationale. . . .[14] Further, while the examining

---

[14] Section 1217 of the TBMP and the cases discussed therein and below use the word "rationale" to refer to the Examining Attorney's and the Board's analysis of the pertinent refusal to register. As the cases applying the principle set forth in TBMP § 1217 illustrate, where, as here, the Board relies on a "different rationale" in affirming a refusal to register, it is not relying on a "new ground" for the refusal in the manner of the Patent Board in the cases cited by Applicant.

> attorney may not raise a new ground for refusal of registration during appeal, except upon remand by the Board for the purpose, *see* TBMP § 1209, the examining attorney is not precluded from raising, during appeal, new arguments and/or additional case citations in support of a ground for refusal which was timely raised and is a subject of the appeal.

This paragraph reflects the common-sense proposition that registrability determinations on appeal are based on the Board's application of the relevant legal principles to the record evidence. The examining attorney's and the applicant's arguments provide means to that end, but are not the end itself.

Applicant's arguments concerning the Board's cases cited in the TBMP holding that the Board may affirm a refusal to register on a "different rationale" from that of the examining attorney do not convince us that those cases were wrongly decided or are inconsistent with notions of due process under the Fifth Amendment and the APA.[15] Contrary to Applicant's position, 19 TTABVUE 13, we find that the cases cited in TBMP Section 1217 demonstrate why the Board may properly issue decisions that rely on a "different rationale" in the sense of not adopting in total all of the arguments and the identical view of the evidence of an examining attorney (or, for that matter, an applicant). For example, in *In re Harley*, 119 USPQ2d 1755 (TTAB 2016), the examining attorney refused registration on three grounds, but the applicants' brief on appeal discussed none of these grounds for refusal. Rather than relying on the examining attorney's arguments in support of the actual refusals, the Board held

---

[15] Indeed, Applicant does not cite a single case, and we have not located one, in which the Federal Circuit has held that the Board may not affirm a refusal to register that is supported by the record as a whole if the Board highlights additional evidence of record that supports the refusal or uses reasoning that does not fully adopt that of the examining attorney.

instead that "Applicants' failure to address these refusals is a basis for affirming the Examining Attorney's refusal of registration on all grounds." *Id.* at 1757. Similarly, in *In re D.B. Kaplan Delicatessen*, 225 USPQ 342 (TTAB 1985), the Board properly considered clauses of a buy-out agreement in addition to those that had been discussed by the examining attorney during prosecution where the issue on appeal was whether the buy-out agreement was "sufficient to show that Donald Kaplan has consented to the use and registration of his name by applicant corporation" under Section 2(c) of the Trademark Act. *Id.* at 343.

Although our cases and TBMP Section 1217 say that the Board may rely on a "different rationale," we take this opportunity to clarify that this terminology does not mean that the Board may rely on a new ground for refusal. If the Board wishes to advance an alternative rationale that rises to the level of a new ground for refusal that the applicant did not have an opportunity to address, remand would be appropriate. For example, in *In re Peace Love World Live LLC*, 127 USPQ2d 1400 (TTAB 2018), the examining attorney had refused registration on the ground that the applied-for matter did not function as a mark because it was mere ornamentation, but in the examining attorney's appeal brief, he claimed that the applicant's mark was "'a widely used informational message and is incapable of functioning as a trademark' as a separate basis, apart from ornamentation, for the failure-to-function refusal." *Id.* at 1401. The Board refused to consider that "separate basis, apart from ornamentation, for the failure-to-function refusal" because the final refusal under Sections 1, 2, and 45 of the Trademark Act "was limited to the mere

ornamentation rationale and the merely informational rationale was raised only in an advisory manner during examination, [and the Board could not] be certain that Applicant had a full opportunity to address the alternative rationale for the failure-to-function refusal prior to appeal." *Id.* As discussed above, we did not rely on a new ground for refusal here.

### C. There Was No Doubt to Resolve in Applicant's Favor

Applicant's argument of last resort relies on the so-called "rule of doubt" in descriptiveness cases. 19 TTABVUE 15-16. Applicant argues that "[t]he Board's reliance on new arguments was a recognition that the Examining Attorney failed to meet her *prima facie* burden to prove that the Mark is descriptive," *id.* at 15, and that "[w]hen there is a modicum of doubt, the determination of whether a mark is descriptive must be solved [sic] in favor of Applicant." *Id.* at 16.

To be sure, when the Board has doubt on the issue of descriptiveness, it resolves such doubt in favor of the applicant. *In re MBNA Am. Bank, N.A.*, 340 F.3d 1328, 67 USPQ2d 1778, 1783 (Fed. Cir. 2003); *In re Zuma Array Ltd.*, 2022 USPQ2d 736, at *8 (TTAB 2022). But the "rule of doubt" applies only where the Board expresses some doubt, *MBNA*, 67 USPQ2d at 1783 ("Without any indication by the Board that it entertained any doubt, the rule of resolving doubt in favor of the application does not apply"), and we did not do so in our decision. 18 TTABVUE 30. To the contrary, based on our review of the record as a whole, including Applicant's own materials, we had "no doubt that consumers of Applicant's goods and services for testing cells on a microfluidic chip would immediately understand that DEEP OPTO PROFILING

describes a key function and purpose of Applicant's chemicals and assays, namely, a self-described 'process' involving the use of optofluidic technology that depends on microfluidics," *id.* at 30-31, because the Examining Attorney had made of record sufficient evidence to establish a prima facie case for mere descriptiveness, and Applicant neither rebutted that evidence nor showed on this request for reconsideration why the Board's decision relying on that evidence was wrong. Accordingly, there is no doubt on the issue of descriptiveness to resolve in Applicant's favor.

**Decision:** Applicant's request for reconsideration is denied. The Board's January 26, 2022 decision stands as issued.